EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cecilia James Soto<br><br>Recurrida<br><br>v.<br><br>Miguel A. Montes Díaz<br><br>Recurrido<br><br>v.<br><br>Cecille M. Montes James<br><br>Peticionaria | Certiorari<br><br>2024 TSPR 27<br><br>213 DPR ___ |

Número del Caso: CC-2023-0227

Fecha: 20 de marzo de 2024

Tribunal de Apelaciones:

     Panel Especial

Abogado de la parte peticionaria:

     Lcdo. Philippe O. Beauchamp Oliveras

Abogada de la parte recurrida:

     Lcda. Lilia M. Quiñones Fuentes

Materia: Derecho de Familia – Los foros del Tribunal General de Justicia tienen la autoridad para ordenar y registrar en otra jurisdicción una determinación de arresto por desacato civil por el incumplimiento con el deber de prestar alimentos, aun cuando la persona contra la cual se emite se encuentre residiendo fuera de Puerto Rico.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cecilia James Soto<br><br>Recurrida<br><br>v.<br><br>Miguel A. Montes Díaz<br><br>Recurrido<br><br>v.<br><br>Cecille M. Montes James<br><br>Peticionaria | CC-2023-0227 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal**

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Este caso nos presenta una nueva oportunidad para reivindicar los poderosos intereses que tiene el Estado en asegurar las condiciones propicias para el desarrollo integral de los jóvenes que representan el futuro de Puerto Rico. En este contexto, venimos llamados a reiterar las obligaciones ineludibles que tienen los progenitores de velar por sus hijos y proveerles a estos el sustento necesario para una vida digna.

Y es que la controversia que hoy atendemos surge precisamente del deber de un padre de continuar descargando su obligación moral y legal de prestar alimentos a su hija, **aun cuando se encuentre ausente de la jurisdicción territorial de Puerto Rico**. Aprovechamos, pues, esta ocasión, para despejar toda duda sobre la autoridad que

poseen nuestros tribunales para hacer valer sus pronunciamientos en la materia de las relaciones paternofiliales en otras jurisdicciones de los Estados Unidos, siempre y cuando conserven válidamente la jurisdicción sobre las personas.

Por estos motivos, **resolvemos que los foros del Tribunal General de Justicia tienen la autoridad para ordenar y registrar en otra jurisdicción una determinación de arresto por desacato civil dirigida a un progenitor que ha incumplido su deber de prestar alimentos, cuando este último se encuentre residiendo fuera de Puerto Rico.**

En vista de que el Tribunal de Apelaciones concluyó que el Tribunal de Primera Instancia se encontraba desprovisto de las herramientas necesarias para hacer efectiva una orden de arresto por desacato civil contra el aquí recurrido, en abstracción del ordenamiento estatal y federal, forzosamente debemos revocar el aludido dictamen.

Consecuentemente, devolvemos el caso al Tribunal de Primera Instancia para que expida un mandamiento y gestione el registro en el Estado de Florida de la obligación alimentaria que tiene el Sr. Miguel A. Montes Díaz para con su hija, la Sra. Cecille M. Montes James. Ademas, el foro primario deberá registrar en la misma jurisdicción su determinación de que el recurrido se encuentra incurso en desacato civil.

Veamos los fundamentos que informan nuestra determinación.

I

Este recurso tiene su origen el 4 de enero de 2021, cuando al Sr. Miguel A. Montes Díaz (señor Montes Díaz o recurrido) se le impuso el pago de una pensión alimentaria en favor de su hija, la Sra. Cecille M. Montes James (señora Montes James o peticionaria). Por orden del Tribunal de Primera Instancia, la obligación alimentaria consistía en la fijación de un pago mensual de $1,039.84 para el beneficio de la peticionaria, quien cumpliría la mayoría de edad a finales de ese mismo año.

Ante el presunto incumplimiento del recurrido con el pago de pensión alimentaria, la madre de la peticionaria, la Sra. Cecilia James Soto (señora James Soto), acudió al foro primario en varias ocasiones. En lo que nos ocupa, el 13 de octubre de 2021, presentó una moción de desacato en la que expuso que el recurrido no había cumplido con los pagos correspondientes a los meses de julio a octubre de 2021, motivo por el cual solicitó su arresto y encarcelamiento si no satisfacía la deuda dentro de quince (15) días.[1]

Así las cosas, el 14 de noviembre de 2021, la peticionaria advino a la mayoría de edad. Al día siguiente, el recurrido presentó una moción solicitando que se le relevara de su obligación de proveer pensión alimentaria a su hija de veintiún (21) años, a pesar de que no había

---

[1] Apéndice del *Certiorari*, *Moción Sobre Desacato*, pág. 66.

emitido los pagos correspondientes desde julio.[2] Trabado el asunto, mediante una *Orden* que fue emitida el 8 de noviembre de 2021, el Tribunal de Primera Instancia le concedió al recurrido quince (15) días para cumplir con el pago de los $4,159.36 que debía hasta ese momento.[3]

No obstante, transcurrido el término concedido, el recurrido no pagó. Por el contrario, mediante una moción del 3 de diciembre de 2021, el recurrido solicitó que se declarara no ha lugar la moción de desacato presentada por la madre de la peticionaria y que se dejara sin efecto la *Orden* emitida el 8 de noviembre de 2021. Sostuvo, que se le violó su derecho a un debido proceso de ley porque la moción presentada no le fue notificada hasta después que el foro primario emitiera y notificara su *Orden*.[4] Atendida la moción, el Tribunal de Primera Instancia emitió una *Resolución* aclarando que el debido proceso de ley del recurrido había sido garantizado en todos los aspectos.[5]

Luego de varios trámites procesales, la peticionaria se opuso a la solicitud de relevo de pensión alimentaria, mediante moción presentada el 24 de marzo de 2022.[6] Argumentó en favor de la necesidad que tenía de recibir dicha pensión alimentaria para sufragar sus estudios

---

[2] Apéndice del *Certiorari*, *Moción Sobre Relevo de la Obligación de Proveer Pensión Alimentaria*, págs. 60-62.

[3] Apéndice del *Certiorari*, *Orden* del 8 de septiembre de 2021, pág. 67.

[4] Apéndice del Alegato de la Parte Recurrida, *Moción*, págs. 5-7.

[5] Apéndice del Alegato de la Parte Recurrida, *Resolución y Orden* del 13 de diciembre de 2021, pág. 8.

[6] Apéndice del *Certiorari*, *Moción en Oposición a Relevo de Pensión Alimentaria – Solicitud de Pensión Alimentaria*, págs. 68-71.

universitarios y necesidades básicas. También afirmó que el recurrido contaba con los medios económicos suficientes e informó al tribunal sobre el reiterado incumplimiento del recurrido con su obligación parental desde julio de 2021.

Ante la incomparecencia del recurrido, la peticionaria volvió a solicitar que se ordenara su arresto, por lo que el foro primario ordenó al recurrido a mostrar causa por la cual no debía hallarse incurso en desacato.[7] Sin embargo, transcurrido el término concedido, el recurrido no acató la *Orden* del tribunal.

Tras diecisiete (17) meses de incumplimiento por parte del recurrido con el pago de los alimentos, la peticionaria presentó la que fue su quinta (5ta) solicitud de desacato y orden de arresto.[8] Por su parte, el recurrido sometió una réplica indicando que no existía orden de pensión alimentaria vigente desde el 16 de noviembre de 2021, fecha en que solicitó que se le relevara de su obligación tras la peticionaria advenir a la mayoría de edad.[9]

Tras considerar los escritos de las partes, **el 20 de octubre de 2022 el Tribunal de Primera Instancia emitió una *Orden* encontrando al recurrido incurso en desacato** y reiterando que la deuda de pensión alimentaria era líquida y exigible. Sin embargo, **señaló que no estaba en posición**

---

[7] Apéndice del *Certiorari*, *Orden* del 5 de julio de 2022, pág. 92.
[8] Apéndice del *Certiorari*, *Urgente Moción Informativa y Reiterando Solicitud de Desacato*, págs. 95-96.
[9] Apéndice del *Certiorari*, *Réplica a "Urgente Moción Informativa y Reiterando Solicitud de Desacato"*, págs. 97-98.

**de ordenar su arresto <u>porque el recurrido no era residente</u> <u>de Puerto Rico</u>** y sugirió a la peticionaria presentar una acción de cobro de dinero en los Estados Unidos.[10]

Ambas partes estuvieron inconformes con esta determinación y presentaron sus respectivas solicitudes de reconsideración. La peticionaria alegó que el remedio sugerido por el foro primario era muy oneroso, por tratarse de una deuda que aumentaba mensualmente y que constituía una condonación *de facto* de la deuda. Expuso que no existía impedimento legal para ordenar el encarcelamiento, porque el recurrido se beneficiaba de los procedimientos legales de Puerto Rico al presentar su solicitud de relevo de pensión en nuestra jurisdicción. Asimismo, solicitó la celebración de una vista de relevo en la cual se dilucidara dicha petición y ordenara el arresto del recurrido, de ser necesario.[11] Por su parte, el recurrido volvió a plantear en su moción que el decreto de pensión alimentaria estuvo vigente hasta que solicitó el relevo de la obligación tras la peticionaria advenir mayor de edad.[12]

Finalmente, el Tribunal de Primera Instancia notificó una *Orden* el 14 de noviembre de 2022 en la que reiteró que el recurrido era responsable del pago de la pensión alimentaria. **Especificó que los alguaciles del Tribunal no**

---

[10] Apéndice del *Certiorari*, *Orden* del 19 de octubre de 2022, págs. 29-30.
[11] Apéndice del *Certiorari*, *Solicitud de Reconsideración* del 4 de noviembre de 2022, págs. 52-56.
[12] Apéndice del *Certiorari*, *Solicitud de Reconsideración* del 2 de noviembre de 2022, págs. 108-110.

**podían realizar el arresto del recurrido, por este residir fuera de la jurisdicción.** Así, señaló que **la peticionaria debía radicar la solicitud en el foro federal para que así se pudiesen activar los mecanismos de cooperación interestatal para ejecutar el arresto del recurrido.**[13]

Insatisfecha, el 13 de diciembre de 2022, la peticionaria acudió al Tribunal de Apelaciones y presentó un recurso de *Certiorari* en donde expuso los mismos argumentos que había señalado en la moción de reconsideración ante el tribunal de instancia. El recurrido no compareció oportunamente ante el foro *a quo*.

Así las cosas, el 22 de febrero de 2023, el foro intermedio denegó la expedición del recurso de *Certiorari* mediante *Resolución*. Expuso que no se podía emitir una orden de arresto en el caso de epígrafe, por ser un "remedio que no es ejecutable".[14] **Indicó que los alguaciles de los tribunales puertorriqueños no poseen la autoridad para diligenciar una orden de arresto en el Estado de Florida, donde se encuentra el recurrido.**[15] Concluyó que la peticionaria debía presentar una acción de cobro de dinero en Estados Unidos o utilizar los mecanismos sobre aseguramiento de sentencia que proveen la Reglas de Procedimiento Civil, a pesar de que la deuda objeto de la

---

[13] Apéndice del *Certiorari*, *Orden* del 8 de noviembre de 2022, págs. 58-59.
[14] Apéndice del *Certiorari*, *Resolución* del 22 de febrero de 2023, pág. 13.
[15] *Íd.*, pág. 12.

controversia es una por concepto de alimentos que vence mes tras mes, y no una ordinaria de cobro de dinero.[16]

Destacamos, que el Juez Sánchez Ramos emitió un voto disidente en el cual rechazó que la ubicación del recurrido y la identidad de quien diligenciara la orden de arresto fueran hechos pertinentes. Además, recordó que las autoridades en todas las jurisdicciones de los Estados Unidos vienen obligadas a reconocer la validez de las órdenes de arresto emitidas en Puerto Rico y estas podrían asistir a la peticionaria en su ejecución.[17]

Inconforme con la *Resolución* del Tribunal de Apelaciones, la peticionaria solicitó sin éxito la reconsideración del dictamen. Así las cosas, compareció ante esta Curia mediante petición de *Certiorari* y esbozó los siguientes señalamientos de error:

> PRIMER ERROR: Erró el Tribunal de Apelaciones al concluir que, ante el incumplimiento injustificado de un alimentante con el pago de una deuda vencida, líquida y exigible por concepto de pensión alimentaria, y que ha sido incurso en desacato, los tribunales de Puerto Rico se encuentran impedidos de emitir que se ordene su arresto por el mero hecho de que el alimentante se encuentra en el estado de Florida.
>
> SEGUNDO ERROR: Erró el Tribunal de Apelaciones al confirmar la condonación *de facto* de una deuda por concepto de pensión alimentaria, a pesar de que ello implica:
>
> (A) Negar que las pensiones alimentarias gozan del más alto interés público, aun cuando la parte alimentista se trata de una estudiante

---

[16] *Id.*
[17] *Íd.*, págs. 15-19.

universitaria a tiempo completo con desempeño académico excelente; y

(B) Afirmar que una deuda por concepto de pensión alimentaria es equiparable a una deuda ordinaria.

Examinado el recurso, el 26 de mayo de 2023 expedimos el auto solicitado. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A.  *Obligación de satisfacer alimentos*

Reiteradamente, hemos expresado que la obligación de todo progenitor de proveer alimentos a sus hijos e hijas está revestida del más alto interés público.[18] Es una política que surge del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico.[19] Además de ser un deber moral, se trata de un deber jurídico constituido, en el que los padres o las personas legalmente responsables son llamados a contribuir a la manutención y al bienestar de sus hijos menores dependientes.[20]

Por esto, la Asamblea Legislativa plasmó la responsabilidad que acarrea todo progenitor de alimentar a sus descendientes en nuestro Código Civil. El Art. 590 establece que las madres y los padres, por razón de la patria potestad, tienen el deber de alimentar a sus hijos

---

[18] Véanse, *Díaz Rodríguez v. García Neris*, 208 DPR 706, 718 (2022); *Santiago Texidor v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009).

[19] Const. P.R., Art. II, Sec. 7.

[20] Art. 3 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 502, *et seq*.

no emancipados, tenerlos en su compañía y educarlos con arreglo a su fortuna.[21] Por otro lado, el Art. 658 regula lo relacionado a los alimentos entre parientes, al disponer que los ascendientes y descendientes están obligados a proveerse alimentos de manera recíproca.[22]

Por su parte, el Art. 653 del Código Civil define alimentos como todo lo indispensable para el sustento, vivienda, vestimenta, recreación y asistencia médica, según la posición social de la familia.[23] Ese término también comprende la educación e instrucción del alimentista, cuando este es menor de edad.[24]

Por la vía jurisprudencial, extrapolamos esta norma al resolver que el proseguir los estudios universitarios o vocacionales comenzados durante la minoridad también forman parte de las necesidades alimentarias de un hijo, aun cuando este advenga a la mayoridad.[25] Establecimos que un hijo que comenzó estudios de bachillerato durante su minoridad tiene derecho a exigir alimentos de sus padres con el propósito de obtener ese grado académico, sujeto a los resultados, diligencia, y continuidad observada en sus estudios.

En cuanto a la adjudicación de alimentos para completar estudios de post grado, resolvimos que estos se adjudicarían de acuerdo con las circunstancias de cada

---

[21] Art. 590, 31 LPRA sec. 7242.
[22] Art. 658, 31 LPRA sec. 7541.
[23] Art. 653, 31 LPRA sec. 7531.
[24] *Íd.*
[25] *Key Nieves v. Oyola Nieves*, 116 DPR 261 (1985).

caso.[26] No obstante, prevalece la norma general que rige en estos asuntos: **la obligación de proveer alimentos no cesa automáticamente por el mero hecho de que el menor haya cumplido los veintiún (21) años.**[27]

Por ello, cuando un menor recipiente de una pensión alimenticia adviene la mayoría de edad, **la obligación del alimentante no cesa hasta tanto un tribunal decrete un relevo de pensión.**[28] Para ello, el alimentante debe informar al tribunal de su interés de ser relevado del pago de la pensión, por razón de que sus hijos están próximos a llegar a la mayoridad. De este modo, para evitar un daño irreparable a cualquiera de las partes, es imperativo que el tribunal atienda con premura estos planteamientos.[29]

B.  *Desacato civil por incumplir con la obligación alimentaria*

Como imperativo constitucional, el encarcelamiento por deudas no está disponible en nuestra jurisdicción para vindicar intereses privados.[30]  Sin embargo, a lo largo de nuestra historia jurídica este Tribunal ha reconocido una excepción a la prohibición al encarcelamiento por deudas: **los casos de alimentos.**[31] Esta excepción nace justamente por su alto interés público y hemos reconocido que la obligación de proveer alimentos es de tan alta jerarquía que el encarcelamiento por deuda mediante desacato civil,

---

[26] *Íd.*, pág. 267.

[27] Véanse, *Toro Sotomayor v. Colón Cruz*, supra; *Key Nieves v. Oyola Nieves*, supra.

[28] Véanse, *Matos v. Abello*, 203 DPR 254, 268 (2019); Art. 19, 8 LPRA sec. 518.

[29] *Santiago v. Maisonet*, 187 DPR 550, 574 (2012).

[30] Const. ELA, Art. II, Sec. 11.

[31] Véanse, *Matos v. Abello*, supra, pág. 269; *Díaz Aponte v. Comunidad San José, Inc.*, 130 DPR 782, 803 (1992).

constituye una excepción a la prohibición constitucional.[32] Más allá de forzar el pago de una deuda, procura obligar el descargo de una responsabilidad de mayor rango.[33]

Sin embargo, conviene aclarar que el encarcelamiento que resulta del incumplimiento con una obligación de proveer alimentos no surge por el mero hecho de que el alimentante adeude una cuantía determinada de dinero, sino que se decreta en virtud de su resistencia a cumplir con una orden judicial.[34] A raíz de ello, hemos razonado que una orden concediendo alimentos es simplemente "un medio de hacer cumplir un deber".[35] Así, el desacato civil es la figura que procura garantizar el cobro de las pensiones atrasadas y provee un mecanismo asequible para lograr el encarcelamiento de un alimentante que ha incumplido con las órdenes judiciales que le imponen el deber de proveer alimentos.[36]

Contrario al desacato criminal, el desacato civil tiene un propósito reparador y no punitivo. Esta distinción resulta pertinente, "ya que es precisamente la naturaleza reparadora del desacato civil lo que ha dado paso a que se le reconozca como excepción a la prohibición constitucional

---

[32] Véanse, *Matos v. Abello*, *supra*, pág. 268; *Álvarez Elvira v. Arias Ferrer*, 156 DPR 352, 372 (2002); *Viajes Lesana, Inc. v. Saavedra*, 115 DPR 703, 709 (1984).

[33] *Viajes Lesana, Inc. v. Saavedra*, supra, pág. 709.

[34] *Íd.*

[35] *Íd.*

[36] Véanse, *Matos v. Abello*, *supra*, pág. 269; *Rodríguez Avilés v. Rodríguez Beruff*, 117 DPR 616, 626-27 (1986); *Otero Fernández v. Alguacil Tribunal Superior,* 116 DPR 733 (1985).

contra el encarcelamiento por deuda en los casos de alimentos".[37]

No obstante, hemos aclarado que el desacato civil, "debe utilizarse con prudencia, por la privación de libertad que conlleva, y limitado a aquellos casos en que hubiera una desobediencia voluntaria y obstinada a una orden o sentencia concediendo alimentos".[38] Por lo tanto, la extensión de la encarcelación depende de la eficacia de ésta como instrumento para dar al alimentista la reparación necesaria.

C. ***Full Faith and Credit for Child Support Orders Act***

Por mandato constitucional, todo estado o territorio está obligado a reconocer y ejecutar las sentencias u órdenes de otro estado o territorio.[39] Ello incluye cualquier orden de arresto, incluso las relacionadas con el proceso de cobro de una pensión alimentaria. Respecto a los decretos de alimentos, la norma general es que **los tribunales de cada estado están obligados a ejecutar una orden de pensión alimentaria que haya sido emitida por otro estado conforme a las disposiciones y los parámetros establecidos en la *Full Faith and Credit for Child Support Orders Act* (FFCCSOA).**[40]

El FFCCSOA es una ley que se promulgó en 1994 con el propósito de que ningún estado pudiese modificar una

---

[37] *Íd.*, pág. 805.

[38] *Sosa Rodríguez v. Rivas Sarieg*, 105 DPR 518, 522 (1976).

[39] Const. EE. UU., Art. IV, Sec. 1.

[40] Ley Púb. Núm. 103-383 de 20 de octubre de 1994 (108 Stat. 4063).

determinación de pensión alimentaria compatible con las leyes del estado emisor, a menos que se cumpliese con ciertos requisitos jurisdiccionales.[41] A tales efectos, la FFCCSOA requiere que se cumpla con el dictamen original de pensión alimentaria que establece el estado emisor.

Una orden de pensión es consistente con los parámetros de la FFCCSOA si el tribunal emisor actuó con jurisdicción conforme a las leyes del estado. Es decir, si tenía jurisdicción sobre las partes y cumplió con el debido proceso de ley en cuanto a la notificación y el derecho que tienen las partes de ser oídas al momento de emitir la orden.

### D. *Ley Interestatal Uniforme de Alimentos entre Parientes*

Para el año 1996, el Congreso federal aprobó la Ley General de Responsabilidad Personal y Oportunidad de Empleos, denominada en inglés como *Personal Responsibility and Work Opportunity Reconciliation Act of 1996*.[42] En su Sec. 321, se le exigió a los estados y a Puerto Rico adoptar la Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP), mejor conocida por su nombre en inglés, *Uniform Interstate Family Support Act* (UIFSA),[43] como

---

[41] Congressional Findings and Declaration of Purpose, en US Government Publishing Office, https://www.gpo.gov/fdsys/granule/USCODE-2011-title28/USCODE-2011-title28-partV-chap115-sec1738B (última visita, 12 de diciembre de 2023).

[42] Ley Púb. Núm. 104-194 de 22 de agosto de 1996, (110 Stat. 2105).

[43] El UIFSA no es en sí un estatuto federal, más bien consiste en una propuesta de ley confeccionada por la Uniform Law Commission, que ha sido adoptada en todos los estados y territorios. Interstate Family Support Act, Uniform Law Commission, https://www.uniformlaws.org/committees/community-

requisito para que sus Programas de Sustento de Menores y Asistencia Pública recibieran fondos federales.[44] De este modo, se impuso dicho requisito ya que el procedimiento en casos donde una parte fuese un **no residente, o cuando se involucrara a dos estados diferentes**, se caracterizaba por una **falta de coordinación y uniformidad que afectaba la comunicación y cooperación entre los estados.**

Con esos fines, nuestra Asamblea Legislativa adoptó la LIUAP, e incorporó la UIFSA a nuestro ordenamiento jurídico.[45] La LIUAP es una traducción conceptual de la UIFSA que establece un sistema procesal uniforme que facilita los trámites atinentes a las órdenes de pensión alimentaria.[46] A raíz de ello, Puerto Rico entró en una relación de reciprocidad con todos los demás estados y jurisdicciones norteamericanas, y también con países extranjeros que hubiesen adoptado leyes análogas a la UIFSA y sus sistemas adjudicativos en materia de paternidad y alimentos, en la medida que sean compatibles con el debido proceso de ley.[47]

Mediante la LIUAP, se persiguen dos (2) propósitos: (1) proveer uniformidad a la legislación aplicable a los procedimientos de alimentos interestatales entre los

---

home?CommunityKey=71d40358-8ec0-49ed-a516-93fc025801fb (última visita, 12 de diciembre de 2023).

[44] *Aponte v. Barbosa Dieppa*, 146 DPR 558, 566-567 (1998).

[45] Ley Interestatal Uniforme de Alimentos entre Parientes, Ley Núm. 180-1997, según enmendada, 8 LPRA sec. 542 *et seq*.

[46] Exposición de motivos, Ley Núm. 180-1997 (1997 [Parte 2] Leyes de Puerto Rico 838).

[47] S. Torres Peralta, *La Ley de sustento de menores y el derecho alimentario en Puerto Rico*, San Juan, Publicaciones STP, 2007, Tomo II, Sec. 17.08.

estados participantes de la UIFSA;[48] y (2) establecer un sistema procesal uniforme para posibilitar la ejecución de órdenes de pensión alimentaria emitidas por tribunales emisores en otros estados.[49]

La Ley faculta para que se dé entera fe y crédito al aceptar la validez de una orden de alimentos de un estado a otro, **para que se autorice su ejecución en otro estado**, y prohíbe su modificación.[50] Es decir, "permite al estado con jurisdicción sobre las partes en casos de reclamaciones de alimentos interestatales llevar a cabo procedimientos administrativos o judiciales **para emitir órdenes contra estas partes**, a ser cumplidas en otro estado, **sin necesidad de recurrir a la intervención de ese otro estado**".[51] (Negrillas suplidas).

En síntesis, esta ley se aprobó para "establecer uniformidad en la fijación y ejecución de obligaciones alimentarias entre personas que residen en diferentes estados con el propósito de proteger y hacer valer los derechos de los menores".[52] Asimismo, la LIUAP "establece un sistema de una sola orden, el cual se apoya en el principio de la **jurisdicción continua y exclusiva** del tribunal que emite una orden de pensión alimentaria o una determinación de filiación".[53] (Negrillas suplidas). El principio de jurisdicción continua y exclusiva tiene como objetivo, en

_____

[48] Torres Peralta, *op cit.*, Sec. 17.09.

[49] *Íd.*

[50] Exposición de motivos, Ley Núm. 180-1997 (1997 [Parte 2] Leyes de Puerto Rico 839).

[51] *Íd.*, pág. 840.

[52] *Id.*, pág. 837.

[53] Véase, *SLG Solá-Maldonado v. Bengoa Becerra*, 182 DPR 675 (2011).

la medida de lo posible, reconocer que sólo una orden de pensión de alimentos puede estar vigente.

De esta forma, una vez que esté vigente una orden de pensión alimentaria, existen varias maneras de impartirle vigor interestatalmente. El método preferido por la UIFSA ——y adoptado consecuentemente en Puerto Rico—— es registrar la orden en el estado en el que se pretende ejecutar.[54] En términos prácticos, esto implica que la orden sería registrada en el tribunal apropiado de ese estado y acompañada con los siguientes documentos:

(1) una carta de trámite al tribunal solicitando el registro y la ejecución;

(2) dos copias, incluyendo una copia certificada, de todas las órdenes a ser registradas, junto con cualquier modificación de la orden;

(3) una declaración jurada de la parte que solicita el registro o una declaración certificada del custodio de los récords indicando la cantidad adeudada;

(4) el nombre del alimentante y si se conoce: (i) la dirección y el número de seguro social del alimentante deudor; (ii) el nombre y la dirección del patrono del alimentante deudor y cualquiera otra fuente de ingreso del alimentante; y (iii) una descripción y el lugar donde está ubicada la propiedad del alimentante en Puerto Rico que no esté exenta de ejecución; y

(5) el nombre y dirección del alimentista, y si aplica, de la agencia o persona a quien se deben remitir los pagos por concepto de pensión alimentaria.[55]

**Una vez registrada la orden de pensión de alimentos, ésta es ejecutable de la misma forma que una orden emitida por un tribunal de Puerto Rico y sujeta a los mismos**

---

[54] Véanse, M. DeMaria, *Jurisdictional Issues under the Uniform Interstate Family Support Act*, 16 J. Am. Acad. Matrimonial Law 243, 255 (1999).
[55] Sec. 502, 8 LPRA sec. 545a.

**procedimientos.**[56] Además, queda claro que la ley de la jurisdicción emisora rige la naturaleza, alcance, cantidad y duración de los pagos, al igual que cualquier otra obligación relacionada con el deber de alimentar.[57]

    **E.** *Jurisdicción sobre un alimentante no residente de Puerto Rico*

Bajo la Sec. 101 de la LIUAP, un tribunal de Puerto Rico adquirirá jurisdicción sobre una persona no residente en procedimientos para fijar, ejecutar o modificar una pensión alimentaria o para establecer la filiación de un menor.[58] Particularmente, dispone que **la persona se somete voluntariamente a la jurisdicción del tribunal al consentir, comparecer o presentar una alegación respondiente que tenga el efecto de renunciar a la defensa de falta de jurisdicción sobre su persona.**[59]

A su vez, la LIUAP también establece que el tribunal de Puerto Rico puede servir como tribunal iniciador para remitir los procedimientos a otro estado.[60] La Sec. 105 viabiliza este principio al consagrar que el tribunal que emite una orden de pensión alimentaria en beneficio de un menor solo pierde su jurisdicción continua y exclusiva de dos formas: **(1)** cuando todas las partes han dejado de residir en ese estado, o **(2)** cuando todas las partes han consentido por escrito a que un tribunal de otro estado modifique la orden y asuma jurisdicción continua y

---

[56] Sec. 503, 8 LPRA sec. 545b.
[57] Sec. 504, 8 LPRA sec. 545c.
[58] Sec. 101, 8 LPRA sec. 542.
[59] *Id.*, 8 LPRA sec. 542(2).
[60] Sec. 503, 8 LPRA sec. 542b.

exclusiva.[61] **Mientras una de estas dos (2) excepciones no ocurra, el tribunal que emite la orden es el único con jurisdicción sobre la materia para atender lo relacionado con alimentos.**

Al presentarse una petición autorizada por la LIUAP, el tribunal iniciador de Puerto Rico remitirá tres (3) copias de la petición y de los documentos que la acompañan al tribunal recurrido o la agencia de sustento de menores del estado recurrido.[62] Para entablar una mejor comunicación, el tribunal de Puerto Rico podrá contactar a otro estado, mediante cualquier medio a su disposición, para obtener información relacionada con las leyes de ese estado, el efecto legal de una sentencia, decreto u orden de ese tribunal y el estatus de los procedimientos en el otro estado.[63]

En el caso de que un alimentante que reside en otro estado sea acusado criminalmente por incumplimiento del deber de prestar alimentos a un alimentista en Puerto Rico, el Gobernador de Puerto Rico podrá solicitar que el gobernador del otro estado extradite a esta persona.[64] Antes de llevar a cabo esta solicitud, el Gobernador de Puerto Rico podrá requerir al Departamento de Justicia que demuestre que, por lo menos con sesenta (60) días de

---

[61] Sec. 105, 8 LPRA sec. 542d(a).
[62] Sec. 204, 8 LPRA. sec. 543c.
[63] Sec. 217, 8 LPRA sec. 543p.
[64] Sec. 801, 8 LPRA sec. 548a.

antelación, el alimentista ha iniciado un procedimiento para procurar una orden de pensión alimentaria.[65]

### III

En su primer señalamiento de error, la peticionaria sostiene que el hecho de que el recurrido resida en el Estado de Florida no es óbice para que los tribunales de Puerto Rico lo encuentren incurso en desacato civil y ordenen su arresto por el incumplimiento de su obligación alimentaria. **Le asiste la razón**.

Según nuestra normativa, la obligación del recurrido está revestida del más alto interés público y surge del derecho a la vida consagrado en nuestra Constitución.[66] Aun cuando la peticionaria haya advenido a la mayoría de edad, el recurrido continúa obligado a sustentar sus estudios universitarios, comenzados durante su minoridad, según fue reiterado por el Tribunal de Primera Instancia. En esta etapa, debemos determinar si la pensión fijada por el foro primario, **la cual el recurrido persiste en desobedecer**, puede ser implementada efectivamente y mediante las herramientas que concede el ordenamiento vigente.

En cuanto a la subsistencia de la obligación alimentaria, basta decir que la norma imperante recaba que la obligación del alimentante no cesa hasta tanto un tribunal decrete un relevo de pensión alimentaria. **Dicho relevo no ha sido decretado en el caso que nos concierne y**

---

[65] Sec. 802, 8 LPRA sec. 548b.
[66] Const. P.R., Art. II, Sec. 7.

**por ende la obligación permanece vigente y actualmente incumplida.**

Visto así, debemos analizar si el patrón de comportamiento del recurrido en este procedimiento, uno caracterizado por su resistencia a dar fiel cumplimiento a los mandatos del Tribunal de Primera Instancia, permanecerá impune por el mero hecho de que este se haya radicado fuera de la jurisdicción de Puerto Rico. Adelantamos que **no avalaremos semejante desenlace.**

El historial del caso revela que, pese a estar en un estado de morosidad respecto a su obligación paternal, el recurrido no dudó en presentar reiteradas mociones ante el foro primario exigiendo el relevo de la pensión alimentaria. No obstante, el historial igualmente demuestra que su contención fue rechazada y que, pese a los mandatos del Tribunal de Primera Instancia para que cumpliera con su deber, el recurrido ha escogido la desidia.

La determinación del foro primario es y sigue siendo que el recurrido se encuentra incurso en desacato —en su vertiente civil— y que la deuda alimentaria constituye una obligación líquida y exigible. Lo anterior es de conformidad con nuestro bien razonado ordenamiento que permite el uso del mecanismo del desacato para hacer cumplir una obligación monetaria de prestar alimentos.

Sin embargo, el Tribunal de Primera Instancia —al igual que el Tribunal de Apelaciones— razonaron que no estaban en posición de ordenar el arresto del recurrido. Si

bien el foro primario sostuvo que el recurrido es responsable del pago de la pensión alimentaria, este acotó que los alguaciles del Tribunal General de Justicia no pueden realizar el arresto porque el recurrido reside fuera de Puerto Rico. Incorrectamente, sugirió que la peticionaria debe presentar una acción de cobro de dinero en Estados Unidos y le exhortó radicar la solicitud en el foro federal para activar los mecanismos de cooperación interestatal y ejecutar el arresto del recurrido.

Indudablemente, este raciocinio se aparta innecesariamente de los estatutos que rigen este proceso, los cuales tienen como propósito primordial facilitar el tipo de reclamo que comprende este pleito. De entrada, los foros inferiores aparentan concentrar la controversia en la autoridad que puedan o no tener los alguaciles de Puerto Rico para ejecutar órdenes de arresto por desacato fuera de los linderos de nuestra jurisdicción. No obstante, el esquema de colaboración y deferencia interestatal prescinde de este tipo de curso decisorio y nos ofrece uno mucho más efectivo. A saber, **bajo la LIUAP procede que el estado emisor registre la obligación parental en el estado en el que se encuentre residiendo el alimentista, para que entonces procedan las autoridades de la segunda jurisdicción a dar cumplimiento a lo ordenado.**

En esta coyuntura, la peticionaria cuenta con una determinación a su favor (1) afirmando la vigencia de la pensión alimenticia, (2) determinando el incumplimiento del

recurrido y (3) declarándolo incurso en desacato. Para que pueda lograr que el Estado en el cual su padre reside haga efectiva la orden del Tribunal de Primera Instancia resta un solo paso, **registrar la orden**.

Para lograr lo anterior debemos recordar que el Estado de Florida y Puerto Rico incorporaron la UIFSA o LIUAP a sus respectivos ordenamientos.[67] Esto necesariamente incluye el mecanismo para establecer un sistema procesal uniforme que facilite la ejecución de órdenes de pensión alimentaria emitidas por tribunales en otras jurisdicciones. Además, la Constitución federal, el FFCCSOA y el UIFSA obligan a Florida a darle entera fe y crédito a la orden de pensión alimentaria emitida por Puerto Rico y, por tanto, **autorice su ejecución**.

Así las cosas, para que Florida pueda ejecutar la orden de pensión alimentaria aquí en disputa, **es indispensable que Puerto Rico tenga jurisdicción sobre el recurrido**. Como sabemos, nuestra LIAUP reconoce los medios por los cuales un tribunal puede asumir jurisdicción sobre la persona del alimentante no residente, entre estos la sumisión voluntaria.[68] Además, el estatuto le reconoce al tribunal emisor una jurisdicción sobre la materia <u>**continua y exclusiva**</u>, salvo que surjan ciertas circunstancias contempladas en ley.[69] No albergamos duda alguna que el recurrido se encuentra firmemente sometido a la jurisdicción del Tribunal General de Justicia.

---

[67] Véase, Sec. 88.0011 *et seq*., Fla. Stat. Ann.
[68] Sec. 101, 8 LPRA sec. 542.
[69] Sec. 105, 8 LPRA sec. 542d.

Lo anterior nos convida a pautar con diafanidad la siguiente norma: **un tribunal de Puerto Rico, con jurisdicción sobre las partes, se encuentra facultado para emitir una orden de encarcelamiento por desacato civil, contra un alimentista <u>no residente</u>, sujeto a que esta sea registrada en las dependencias aplicables de la jurisdicción donde este reside, conforme al esquema procesal de la LIUAP. El diligenciamiento de la orden de arresto recaerá en las autoridades de esa jurisdicción.**

Aquí, resta que el Tribunal de Primera Instancia emita una *Orden* que recoja sus determinaciones respecto a la pensión alimentaria y su cumplimiento. Esta *Orden* deberá ser **registrada** por su personal en el Estado de Florida. Recordemos, que la legislación vigente permite a nuestros tribunales entablar las comunicaciones necesarias con las autoridades floridanas en aras de agilizar los trámites. A la luz de lo expuesto, concluimos que los foros inferiores erraron en su interpretación del derecho aplicable y cometieron el primer error señalado.

Resolver lo contrario propinaría un golpe nefasto a la política pública de nuestra jurisdicción en favor de los intereses óptimos de los menores y otros alimentistas. En este contexto muy especial, las fronteras interjurisdiccionales no son un obstáculo para hacer cumplir las órdenes de pensión alimentaria y aquellos mandatos que de ellas procedan.

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que expida una *Orden* en virtud de la cual reitere la vigencia de la pensión alimentaria en favor de la Sra. Cecille M. Montes James y ordene el arresto del Sr. Miguel A. Montes Díaz, por estar incurso en desacato civil por el incumplimiento de su obligación de prestar alimentos. Consecuentemente, el foro primario deberá valerse de los mecanismos que provee la Ley Interestatal Uniforme de Alimentos entre Parientes, Ley Núm. 180-1997, según enmendada, 8 LPRA sec. 542 *et seq.*, para registrar la *Orden* en el Estado de Florida.

Se dictará Sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cecilia James Soto<br>Recurrida<br><br>v.<br><br>Miguel A. Montes Díaz<br>Recurrido<br><br>v.<br><br>Cecille M. Montes James<br>Peticionaria | CC-2023-0227 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Por los fundamentos que anteceden, se revoca la *Resolución* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que expida una *Orden* en virtud de la cual reitere la vigencia de la pensión alimentaria en favor de la Sra. Cecille M. Montes James y ordene el arresto del Sr. Miguel A. Montes Díaz, por estar incurso en desacato civil por el incumplimiento de su obligación de prestar alimentos.

Consecuentemente, el foro primario deberá valerse de los mecanismos que provee la Ley Interestatal Uniforme de Alimentos entre Parientes, Ley Núm. 180-1997, según enmendada, 8 LPRA sec. 542 *et seq.*, para registrar la *Orden* en el Estado de Florida.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo