ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| KATHERINE JANITZA MERCADO SOTO<br>Apelado<br><br>v.<br><br>EDGARDO EMMANUEL SUÁREZ LÓPEZ<br>Apelante | KLAN202400120 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm. AR2022RF00485<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece Edgardo Emmanuel Suárez López (Sr. Suárez López o apelante) y solicita la revocación de la *Sentencia* sobre pensión alimentaria emitida el 1 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala de Arecibo (TPI o foro primario).

Por los fundamentos que exponemos a continuación, modificamos el dictamen apelado. Veamos.

**I.**

El apelante y Katherine Janitza Mercado Soto (Sra. Mercado Soto o apelada) procrearon tres hijos (D.E.S.M; K.M.S.M y L.S.M), quienes a la fecha del inicio del pleito de epígrafe contaban con diez (10), cinco (5) y dos (2) años de edad, respectivamente. El 17 de junio de 2022, la Sra. Mercado Soto interpuso la *Demanda*[1] de título en contra del Sr. Suárez López. Informó que, la Administración para el Sustento de Menores (ASUME) dictó una *Resolución*[2] sobre pensión alimentaria a favor de sus dos hijos mayores (D.E.S.M. y K.M.S.M.),

---

[1] Apéndice, págs. 8-9.
[2] Apéndice, págs. 1-7.

Número Identificador

SEN2024_____

con efectividad de 1 de abril de 2017. Añadió que, hasta la fecha, no había pensión alimentaria establecida a favor del hijo menor, L.S.M. Por ello y transcurridos más de tres años, solicitó la revisión de la pensión alimentaria de D.E.S.M. y K.M.S.M., así como la fijación de la pensión alimentaria a favor de L.S.M.[3]

El foro primario remitió el asunto ante la Examinadora de Pensiones Alimentarias (EPA) quien, luego de celebrar una vista, emitió un *Informe*[4] (preliminar), el 10 de noviembre de 2022. En este, recomendó al TPI acoger una estipulación para mantener, provisionalmente y a través de ASUME, la pensión alimentaria a favor de los tres menores en $400.00 mensuales, efectivo el 17 de junio de 2022. Además, expuso que, las partes estipularon que el Sr. Suárez López pagaría el 50% de los gastos escolares, el 50% de los gastos médicos de los menores que no cubra el Plan de Salud del Gobierno (Vital) y el 50% de los gastos extracurriculares de pelota del menor, D.E.S.M. En particular reconoció que, la deuda por concepto de retroactividad sería calculada en la vista final de alimentos, "si alguna". Basado en lo antes, el TPI notificó una *Resolución* el 14 de noviembre de 2022.[5]

Así las cosas y continuados los procesos ordinarios, el demandado acreditó su contestación a la demanda, el 19 de enero de 2023. Culminado el descubrimiento de prueba, se celebró la vista final el 16 y 24 de octubre de 2023. Luego de escuchar el testimonio de las partes, quienes comparecieron debidamente representadas por abogadas, y evaluada la prueba documental, la EPA emitió un *Informe y Recomendaciones,* el 27 de octubre de 2023.[6] En su informe, la EPA hizo constar lo siguiente con respecto a imputar ingresos al padre no custodio:

---

[3] Apéndice, págs. 8-9.
[4] Apéndice, págs. 11-12.
[5] Apéndice, págs. 13-14.
[6] Apéndice, págs. 221-230.

> [...] De otra parte, consideramos que el padre no custodio puede tener la capacidad de entrenar jóvenes en el deporte de pelota, aunque alegó que actualmente no lo hace, lo que podría resultar en la capacidad de generar ingresos adicionales. Su testimonio no nos mereció entera credibilidad. Luego de evaluada detenidamente la prueba presentada sobre los ingresos del padre no custodio como jugador de pelota profesional, encontramos razonable utilizar la doctrina de imputación de ingresos, por lo que consideramos justo utilizar un ingreso neto aproximado en la suma de $255.96 mensuales, luego de las deducciones mandatorias, para efectos del cómputo de la revisión de la pensión alimentaria.[7]

Atendido el referido *Informe*, el TPI acogió las recomendaciones de la EPA en la *Sentencia* emitida el 1 de noviembre de 2023. En su consecuencia, ordenó al apelante pagar, a favor de los tres menores, $574.00 mensuales por concepto de pensión alimentaria, el 50% de los gastos escolares y el 50% de los gastos médicos bajo el plan Vital. Además, le impuso el pago de los gastos extracurriculares derivados del deporte de pelota que practica el menor, D.E.S.M. En particular, ordenó a ASUME actualizar y conciliar la cuenta que existe entre las partes con la nueva cantidad de pensión de $574.00. Lo antes, con efectividad de 17 de junio de 2022, para que dicha agencia calcule la deuda por concepto de retroactividad, "si alguna" y un plan de pago "si alguno". Por último, impuso al Sr. Suárez López el pago de $900.00 por concepto de honorarios de abogado a favor de la Sra. Mercado Soto, al amparo del inciso (1) del Artículo 22 de la Ley Núm. 5, 8 LPRA sec. 521(1).[8]

Insatisfecho, el apelante solicitó reconsideración y determinaciones de hechos adicionales,[9] a lo cual se opuso la apelada.[10] Evaluado lo anterior, el 19 de enero de 2024, el TPI notificó una *Resolución* en la cual consignó lo siguiente:

---

[7] Apéndice, pág. 223.
[8] Cabe señalar que, previamente, el 22 de septiembre de 2023, el TPI impuso al Sr. Suárez López el pago de $150.00 en honorarios de abogado los cuales, en reconsideración, dejó sin efecto mediante un dictamen, notificado el 18 de octubre de 2023.
[9] Apéndice, págs. 234-243.
[10] Apéndice, págs. 244-246.

Surge del talonario del Sr. Edgardo Emmanuel Suárez López, padre no custodio, que éste generó un ingreso bruto de $458.38 y neto de $408.01 semanales ($1,768.04 neto mensuales) durante la semana del 23 al 29 de marzo de 2023, producto de su trabajo en MAS Services, ingreso que actualmente continúa generando en esa compañía. Conforme a la prueba desfilada y creída, el padre no custodio tuvo en el año 2022 y continúa teniendo en el año 2023, igual capacidad para generar el mismo ingreso de $1,768.04 neto mensuales. Ello, pues según su testimonio para el año 2022 devengaba $9.50 la hora por el trabajo realizado para Constructora J. González y Class Contractor Corporation, igual que al presente con MAS Services.

Además, según la prueba desfilada y creída, el padre no custodio es jugador de pelota profesional del equipo Camuy Arenas AA. A esos efectos, se desprende del expediente judicial que para el 2022 generó un ingreso como pelotero profesional de $3,326.00 anuales ($277.16 mensuales), que luego de las deducciones mandatorias surge un ingreso neto de $255.96 mensuales. La suma de ambos ingresos asciende a $2,024.00 mensuales, ingreso del padre no custodio que se utilizó para el cómputo de la revisión de la pensión alimentaria. En cuanto a la Sra. Katherine Janitza Mercado Soto, madre custodio, luego de evaluada la amplia prueba documental y testifical, se le imputó a ésta la capacidad de generar el mismo ingreso neto que genera el padre no custodio, la suma de $2,024.00 mensuales, para efectos de su aportación en el cómputo de la pensión alimentaria.

Es sabido que el derecho de los hijos a recibir alimentos y la correlativa obligación de los padres a darlos, tienen su génesis en el derecho natural, en los lazos indisolubles de amor, respeto, solidaridad humana y profunda responsabilidad del padre por los hijos que trae al mundo, valores de la más alta jerarquía y de índole ético-moral, que constituyen una piedra angular de toda sociedad civilizada. Véase Sarah Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, Publicaciones STP, Inc., 2007, Tomo 1, pág. 1.11.

Consideramos que la pensión alimentaria establecida por la suma de $574.00 mensuales, más el 50% de los gastos escolares, el 50% de los gastos médicos que no cubra el plan médico, y el 50% de los gastos extracurriculares del deporte de pelota, es una justa y razonable, acorde con los gastos y necesidades de los tres (3) menores alimentistas y los recursos de ambos padres alimentantes.

A la luz de todas las circunstancias del caso, se declara No Ha Lugar la "Moción en Solicitud de Reconsideración y en Solicitud de Determinación de Hechos Adicionales y Enmiendas a Determinaciones de Hechos" promovida por el Sr. Edgardo Emmanuel Suárez López, y se mantiene la Sentencia dictada el 1 de noviembre de 2023, en todos sus aspectos.[11] (Notas y énfasis omitidos.)

Inconforme, el Sr. Suárez López acude ante esta Curia y le imputa dos errores al foro primario, a saber:

Erró el TPI al imputar un ingreso incorrecto al apelante que no se basó en la prueba desfilada ni en el ordenamiento contenido en las guías mandatorias para computar las pensiones alimentarias en Puerto Rico.

---

[11] Apéndice, págs. 247-248.

> Erró el TPI al imponer una suma de honorarios de abogado en favor de la apelada a pesar de que es contrario a la ley para el sustento de menores.

Pendiente lo anterior, ordenamos la presentación de la transcripción de las dos vistas y autorizamos a la apelada a continuar con su representación por derecho propio ante la renuncia de su representante legal en la etapa apelativa. La apelada compareció mediante dos escritos, en los cuales expuso su oposición al recurso instado y reiteró la presunta deuda pendiente, a favor de los menores. Por su parte, el apelante presentó una moción en auxilio de jurisdicción, en aras de paralizar la celebración de una vista de desacato, pendiente la adjudicación del presente recurso apelativo.

Evaluada la totalidad de las circunstancias, mediante *Resolución* de 11 de abril de 2024, ordenamos -únicamente- la paralización de la vista sobre desacato. A su vez, destacamos que, nada de lo antes incide en la responsabilidad de pago de alimentos a favor de los tres menores.

Con el beneficio de la comparecencia de las partes y acogida la transcripción de las dos vistas (sin que se consignaran objeciones a la misma), procedemos a resolver.

## II.

### A. Alimentos

El derecho de los hijos a recibir alimentos y la relacionada obligación de los padres a darlos cuando corresponda emanan del derecho natural, de los lazos indisolubles de solidaridad humana y de la inmensa responsabilidad de quienes traen hijos al mundo. *Argüello v. Argüello,* 155 DPR 62, 69 (2001), citando a S. Torres Peralta, *La Ley Especial de Sustento de Menores y el derecho de alimentos en Puerto Rico,* San Juan, Pubs. STP, 1997, pág. 1.1. Los referidos valores son de la más alta jerarquía ético-moral y constituyen una piedra angular en toda sociedad civilizada. *Íd.* Son,

además, derechos y obligaciones que surgen del derecho constitucional a la vida y están revestidos del más alto interés público. *Montes Díaz v. Montes James,* 2024 TSPR 27, resuelto el 20 de marzo de 2024.

Estatutariamente, la obligación alimentaria está establecida expresamente en los Artículos 653, 654 y 655 de la Ley Núm. 55-2020, mejor conocida como el Código Civil de Puerto Rico de 2020. La referida obligación cubre todo lo que es indispensable al sustento del menor, su habitación, vestido y asistencia médica, según la posición social de la familia. *Montes Díaz v. Montes James,* supra. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor edad. *Íd*; Artículo 653 del Código Civil de 2020.

La fijación de la cuantía de alimentos es personal de cada excónyuge, además de, proporcional a los recursos económicos del que los da y a las necesidades del que los recibe. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 718 (2022). Así pues, la determinación de la cuantía de los alimentos corresponde al prudente arbitrio del juzgador, quien debe velar porque la cuantía que se establezca cumpla con el principio de proporcionalidad. *Pesquera Fuentes v. Colón Molina,* 202 DPR 93, 108-109 (2019); *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 171 (2016). Durante el proceso evaluativo para determinar la pensión alimentaria procede auscultar, tanto la capacidad económica del padre o madre no custodio, como la del padre o madre custodio, en la medida en que, ambos están obligados a prestar alimentos de forma proporcional a sus recursos. *Franco Restro v. Rivera Aponte,* 187 DPR 137, 150 (2012).

Cónsono con lo anterior, y atinente a la presente causa, el Artículo 10 de las Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico (Guías Mandatorias), Reglamento Núm.

8529 de 30 de octubre de 2014, establece que el foro primario imputará ingresos cuando:

    a) existan indicios o señales de que el ingreso es mayor al que la persona informa.

    b) la persona está desempleada.

    c) la persona está trabajando a tiempo parcial y el ingreso que recibe es menor al salario mínimo federal prevaleciente en Puerto Rico a base de 40 horas semanales.

    d) la persona cuenta con un ingreso bruto mensual menor al salario mínimo federal prevaleciente en Puerto Rico a base de 40 horas semanales. [...]

    e) la persona haya reducido su capacidad productiva para eludir la responsabilidad de alimentar o haya sido despedida de su empleo por causas imputadas a esta.

Al momento de imputar una cantidad mayor al salario mínimo federal, el juzgador o la juzgadora podrá considerar los factores siguientes: la empleabilidad de la persona custodia o la de la persona no custodia, su historial de trabajo, los ingresos devengados anteriormente, su profesión y preparación académica, su estilo de vida, los gastos en los que la persona incurre, la naturaleza y cantidad de las propiedades con las que cuenta, la realidad de la economía informal, el ingreso promedio del oficio, ocupación o profesión y cualquier otra prueba pertinente. Artículo 12(1)(a)(1) de las Guías Mandatorias.

Por otro lado, las Guías establecen que, para imputar el gasto por concepto de vivienda se toma en consideración la cantidad mensual que, en efecto, la persona custodia paga o tiene que pagar por concepto de renta o hipoteca de la vivienda en la cual residen los o las alimentistas, o cualquier cantidad que la persona custodia aporta o tiene que aportar por la vivienda en la que residen estos o estas. La cantidad mensual se divide por el número de personas que residen en la vivienda para obtener una cantidad per cápita que se multiplica por el número de alimentistas para los o las cuales se está computando la pensión alimentaria. El resultado es la cuantía por la cual la persona custodia y la no custodia deberán responder proporcionalmente. El concepto vivienda incluye las cuotas de mantenimiento. Art. 20(1)(d) de las Guías.

Cabe señalar que, en virtud del Artículo 16 de la Ley Núm. 5 de 30 de diciembre de 1986, Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 515, es compulsorio el descubrimiento de prueba sobre la situación económica del alimentante en casos relacionados con pensiones alimentarias y conforme a ello fijar la cuantía a pagar por concepto de pensión alimentaria. *Díaz Rodríguez v. García Neris,* supra. Sin embargo, si el alimentante no custodio admite la capacidad económica para pagar una pensión de alimentos razonable, este queda exento de someter información sobre sus ingresos mediante la Planilla de Información Personal (PIPE). *Íd.,* pág. 179. En cuyo caso, sólo restará presentarse prueba sobre las necesidades del alimentista previo a fijar la pensión correspondiente. *Íd.*

De otra parte, los honorarios de abogado, el Artículo 22 de la Ley Núm. 5, *supra*, establece lo siguiente:

(1) En cualquier procedimiento bajo este capítulo para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista **cuando éste prevalezca**. (Énfasis suplido.)

Sobre este tema, el Tribunal Supremo resolvió en *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728 (2009) que, la obligación alimentaria incluye el pago de una cuantía para sufragar los honorarios de abogado a favor de los menores, sin que se requiera para imponerla que la parte demandada haya actuado temerariamente al defenderse de la reclamación en su contra. Dispuso además que, tal derecho existe independientemente de que el padre o la madre alimentista esté representada por una entidad que ofrezca servicios legales para indigentes. *Íd.*

**B. Apreciación de prueba**

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y adjudicación de credibilidad que

realiza el juzgador de los hechos sobre la prueba testifical. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, res. 23 de abril de 2024. Ello, debido a que, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Después de todo, es el juzgador de los hechos o el jurado quien escucha la prueba testifical y evalúa el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez,* supra.

De conformidad, el Tribunal Supremo de Puerto Rico ha resuelto que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Negrón Ramírez,* supra. A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986).

Por otro lado, la Regla 110 (a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110(a), dispone que "el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes". A su vez, en los casos civiles, la Regla 110(f) de las Reglas de Evidencia, 32 LPRA Ap. VI, R.110(f), establece que "la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario". Cónsono con lo anterior, el Tribunal Supremo ha resuelto que, [d]e ordinario, el *quantum* de prueba necesario para prevalecer en el ámbito administrativo es el

de preponderancia de la prueba". *OEG v. Martínez Giraud*, 210 DPR 79, 93 (2022).

**III.**

En su recurso, el apelante argumenta como primer error que, el foro primario incidió en la apreciación de la prueba y en particular, al imputarle ingresos, a pesar de que no se cumplen los criterios del Artículo 10 de la Guías Mandatorias. En apretada síntesis, arguye que, la prueba que recibió el juzgador de los hechos fue que él trabaja a tiempo completo, aun cuando devenga un salario menor al salario mínimo federal. Señala como segundo error, la imposición de honorarios de abogado a favor de la alimentista. Expone que, no proceden concederlos debido a que él es quien prevalecerá luego de que, conforme a derecho, se reduzca a $312.20 la pensión fijada para el año 2023, lo cual implica que la apelada no prevaleció. Añade que, la EPA hizo determinaciones de hechos que no están basadas en la prueba ante sí. Insiste en que no cabe hablar de capacidad para generar ingresos adicionales debido a que el Sr. Suárez López niega ofrecer clínicas de pelota a jóvenes.

Por su parte, la apelada alega que, no está de acuerdo con la revisión de la pensión alimentaria que propone el apelante. Arguye que, el Sr. Suárez López informó falsamente a ASUME que ella devenga un salario de $2,024.00, cuando la realidad es que genera $1,090.00 neto mensualmente. Aduce que, el apelante renunció a la patria potestad de los tres menores a quienes -al 21 de marzo de 2024- adeuda $4,628.00 en pensión alimentaria. Asegura que, el Sr. Suárez López no fue despedido de su empleo tal cual alega, sino que, renunció voluntariamente y está promocionando en las redes sociales, junto a su actual esposa, una empresa de construcción, mantenimiento de áreas verdes, limpieza y desinfección.

Surge claramente del *Informe* de la EPA, de la *Resolución* que emitió el foro primario el 19 de enero de 2024 y de la prueba

documental que obra en el expediente que, el ingreso total utilizado para computar la revisión de la pensión alimentaria fue de $2,024.00 mensuales. El mismo se compone del salario devengado en MAS Services, a razón de $9.50 por hora por 40 horas semanales, más el ingreso mensual producto de su participación como pelotero profesional en el equipo Camuy Arenas AA. Los referidos salarios surgen de la certificación de empleo de MAS Services, fechada el 28 de marzo de 2023 y del formulario 480.6SP, correspondiente al Grupo Camuy Arenas AA Inc.[12] Entiéndase que, la prueba documental que obra en el expediente sustenta la apreciación de la prueba que realizó el foro primario en el caso de marras. De lo antes colegimos que, el TPI correctamente determinó que le compete al Sr. Suárez López pagar $574.00 mensuales por concepto de pensión alimentaria para beneficio de sus tres hijos menores de edad. Añádase a ello que, el apelante no nos ha puesto en posición para revertir la deferencia que merecen las determinaciones de hecho y las conclusiones de derecho en las cuales se fundamenta el dictamen apelado.

De otra parte, nótese que, la EPA en su *Informe* -el cual el foro primario acogió en la *Sentencia* apelada- recomendó imputar ingresos de $255.96 al Sr. Suárez López fundamentado en su capacidad de entrenar jóvenes en el deporte de pelota. Sin embargo, resulta evidente que, el referido ingreso por concepto de imputación de ingresos no fue considerado al computar la pensión alimentaria atribuible al Sr. Suárez López. A pesar de lo anterior, el foro primario debió expresamente rechazar la recomendación de la EPA con respecto a la imputación de ingresos. Según reseñamos en el tracto procesal, el apelante trabaja a tiempo completo, devenga un salario inferior al mínimo federal prevaleciente en Puerto Rico, a base de 40 horas semanales, sin evidencia de que devenga un salario mayor al

---

[12] Apéndice, págs. 125 y 122, respectivamente.

informado para el año 2023 o que redujo su capacidad productiva para eludir su responsabilidad de alimentar. Sobre tales bases, no procede en derecho imputarle ingresos al Sr. Suárez López, en virtud del inciso (d) del Artículo 10 de las Guías Mandatorias.

En ese sentido, procede modificar la *Sentencia* apelada, a los únicos fines de descartar la doctrina de imputación de ingresos a este caso. Así modificada, se confirma. A esos efectos y cónsono con la normativa antes expuesta, no procede alterar la imposición de honorarios de abogado en este caso. Valga aclarar que, lo aquí resuelto en nada incide sobre la presunta deuda por concepto de pensión alimentaria atribuida al apelante y pendiente de adjudicación ante el foro primario. Según discutido, la obligación de todo progenitor de proveer alimentos, educación, vivienda, vestimenta, recreación, asistencia médica, entre otros, está revestida del más alto interés público. *Montes Díaz v. Montes James,* supra.

**IV.**

Por las razones antes expuestas, modificamos la *Sentencia* apelada, así modificada, se confirma. En su consecuencia dejamos sin efecto la paralización decretada en cuanto a la vista de desacato, y ordenamos la continuación de los procedimientos de conformidad con lo aquí resuelto, sin necesidad de esperar la expedición del correspondiente mandato.

Notifíquese inmediatamente a las partes y al Honorable Juez Gerardo Rafael Sarriera Lázaro.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones