ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| DAVID LINARES NUÑEZ | | *Apelación*, procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón |
|---|---|---|
| Parte Peticionario | | |
| | TA2025CE00081 | Caso Núm.: |
| v. | | D DI2015-1127 |
| | | Sala: 3001 |
| YASMIN ZAYAS RIVERA | | Sobre: |
| Parte Recurrida | | Divorcio |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de julio de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. David Linares Núñez (en adelante, el "señor Linares Núñez" o "Peticionario"), mediante recurso de *certiorari* presentado el 3 de julio de 2025. Nos solicitó la revocación de la *Resolución Enmendada* emitida por el Tribunal de Primera Instancia Sala Superior de Bayamón (en adelante, "TPI"), el 9 de junio de 2025. A través de dicho dictamen, el TPI encontró incurso en desacato al señor Linares Núñez por incumplir con el pago de la pensión alimentaria objeto de esta controversia.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración, *confirmamos* la *Resolución Enmendada* en cuanto a la imposición del pago de la deuda alimentaria y *revocamos* en torno a la determinación de hallar incurso en desacato al Peticionario.

**I.**

El caso de epígrafe tuvo su génesis el 29 de junio de 2015, con la presentación de una "**Demanda de Divorcio**" por parte del señor Linares Núñez en contra de la Sra. Yasmin Zayas Rivera (en adelante, la "señora

Zayas Rivera" o "Recurrida"). Mediante la misma, expresó que el matrimonio habido entre ambos se encontraba totalmente deteriorado, motivo por el cual solicitó su disolución. El 28 de julio de 2015, la Recurrida presentó un escrito intitulado "**Contestación a la Demanda, Defensas Afirmativas y Reconvención**", a través del cual expresó que el vínculo matrimonial que la unía al Peticionario se encontraba irremediablemente roto y que no había posibilidad alguna de reconciliación. Asimismo, argumentó que las deudas correspondientes a la Sociedad Legal de Gananciales habida entre las partes estaban siendo asumidas de manera desproporcionada por su parte, por lo cual solicitó al Tribunal que adoptara medidas provisionales al respecto. Además, solicitó que se le concediera la custodia de los tres hijos, que la patria potestad fuera ejercida de manera compartida y que se fijara una pensión alimentaria no menor a $3,000.00 para los hijos menores de edad.

En este contexto, el 8 de abril de 2016, el TPI dictó una *Sentencia Enmendada Nunc* mediante la cual disolvió el matrimonio entre las partes, otorgó la custodia de los hijos a la señora Zayas Rivera y dispuso que la patria potestad fuera compartida. Del mismo modo, fijó una pensión alimentaria provisional de $1,300.00 quincenales para los hijos hasta que se efectuara la vista ante la examinadora de pensiones. Varios años después, el 21 de mayo de 2019, el TPI estableció el pago de una pensión alimentaria por la suma de $819.00 quincenales exclusivamente a favor del menor D.D.L.Z. Allí se le advirtió que la pensión regiría entre las partes hasta que el foro recurrido o la Administración para el Sustento de Menores realice una nueva determinación. De igual manera, se le advirtió al alimentante que el incumplimiento con el pago podría conllevar ser hallado incurso en desacato.

Posteriormente, el 28 de febrero del 2020, se emitió una *Resolución* en la cual se acogieron las recomendaciones contenidas en el Informe Social Forense de la Unidad Social, a las cuales ambas partes se allanaron. Como resultado, se dispuso que el menor D.D.L.Z. permanecería bajo custodia compartida de sus padres, la cual se llevaría a cabo en semanas

alternas, de lunes a lunes. Durante el periodo de marzo de 2020 a julio de 2022, la custodia compartida se desarrolló conforme a lo establecido por el Tribunal, siendo que cada progenitor cubría los gastos del menor durante el tiempo que este permanecía bajo su cuidado. Sin embargo, a partir del mes de julio de 2022, la custodia compartida en tiempo igual se modificó *de facto*, pues el menor dejó de pernoctar en la residencia del señor Linares Núñez.

Tiempo después, el 26 de octubre de 2023, la Recurrida presentó –por derecho propio– una "**Moción**" en la que indicó que, desde que el Tribunal dispuso la custodia compartida del menor D.D.L.Z. el 28 de febrero de 2020, el señor Linares Núñez dejó de cumplir con el pago de la pensión alimentaria correspondiente. Manifestó que, desde que el menor D.D.L.Z. inició sus estudios universitarios, ha sido ella quien se ha encargado de transportarlo y de cubrir sus necesidades. Además, sostuvo que el Peticionario se negaba a contribuir con el pago de la matrícula universitaria, alegando que su hijo ya no mantenía comunicación con él. Posteriormente, en el mes de abril de 2024, el señor Linares Núñez reanudó los pagos de pensión alimentaria.

El 13 de mayo de 2024, el Peticionario presentó un escrito intitulado "**Oposición a Imposición de Alegados Atrasos en Pensión Alimentaria**" en el que alegó que ambos progenitores habían acordado, de manera voluntaria y clara, que durante el período de custodia compartida cada uno asumiría la responsabilidad de proveer alimentos al menor. Sostuvo que la señora Zayas Rivera presentó el reclamo de pensión de forma tardía, lo cual, según él, constituía una violación a dicho acuerdo y un menosprecio a los principios de equidad y justicia. Añadió que no procedía el cobro de alimentos en forma retroactiva, ya que ello contravendría el acuerdo alcanzado entre las partes y resultaría en un enriquecimiento injusto. El 13 de agosto de 2024, el señor Linares Núñez presentó otra moción titulada "**Moción Reiterando Oposición de Alegados Atrasos en Pensión Alimentaria**" a través de la cual reiteró los planteamientos expuestos en su moción anterior y solicitó nuevamente que se declarara improcedente el cobro retroactivo de los alimentos.

Más adelante, el 18 de marzo de 2025, se celebró una Vista de Desacato para atender los reclamos de la señora Zayas Rivera sobre el presunto incumplimiento con el pago de pensión alimentaria por parte del Peticionario. El 2 de mayo de 2025, el TPI emitió una *Resolución* en la que encontró incurso en desacato al señor Linares Núñez por el incumplimiento con el pago de pensión alimentaria en los meses de agosto de 2022 a marzo de 2024 y le ordenó el pago de $16,380.00, a razón de $819.00 mensuales por el total de 20 meses. Además, impuso el pago de $500.00 por concepto de honorarios de abogado.

Con fecha de 29 de mayo de 2025, la señora Zayas Rivera presentó una "**Reconsideración**" en la que argumentó que el Tribunal, por error, dispuso que la pensión ascendía a $819.00 mensuales, cuando en realidad la cantidad correcta de $819.00 quincenales, según la *Resolución* del 21 de mayo de 2019. Explicó que el incumplimiento del señor Linares Núñez correspondía a una pensión mensual de $1,638.00 durante un periodo de 20 meses para un total de $32,760.00. Ante ello, solicitó que se corrigiera la cantidad adeudada y, a su vez, que se enmendara el plan de pago, ya sea duplicando los pagos establecidos o, en su defecto, exigiendo un adelanto significativo de $16,380.00 como pago inmediato, continuando luego con el pago concedido.

El 20 de mayo de 2025, el señor Linares Núñez presentó una "**Moción en Solicitud de Reconsideración**" en la cual indicó que la *Resolución* dictada el 2 de mayo de 2025 es contraria al derecho aplicable, a la evidencia presentada, a la equidad procesal y a los principios de justicia que deben regir los procedimientos de familia. Señaló que la imposición de la referida deuda de manera retroactiva resulta perjudicial para una parte que siempre ha cumplido con su responsabilidad de manutención hacia su hijo. Arguyó que la señora Zayas Rivera nunca cuestionó la suspensión de los pagos durante el tiempo en que se mantuvo la custodia compartida, que alegó estuvo vigente por más de dos (2) años y medio hasta mediados del año 2022. Argumentó que el silencio de la señora Zayas Rivera demostró

un consentimiento tácito y sostenido con el acuerdo de no exigirse alimentos de forma recíproca durante dicho período.

Además, expresó que, tras más de tres (3) años y medio desde la implementación del régimen de custodia compartida, la señora Zayas Rivera presentó un reclamo por alegados pagos retroactivos. Alegó que dicha petición se encontraba afectada por la doctrina de incuria, la cual impedía que una parte permaneciera inactiva durante un lapso excesivamente largo sin ejercer un derecho, para luego intentar hacerlo de manera retroactiva en perjuicio de la parte contraria. Enunció que, en abril de 2024, reanudó voluntariamente los pagos de pensión alimentaria lo que, según él, demostraba su buena fe. En vista de lo anterior, le peticionó al Tribunal que declarara "No Ha Lugar" la imposición de deuda retroactiva o, en su defecto, que autorizara el pago de cualquier suma final en plazos mensuales divididos en un término de dos (2) meses.

Finalmente, el 9 de junio de 2025, el TPI emitió una *Resolución Enmendada* en la que corrigió su decisión anterior a los fines de modificar la suma adeudada a la cantidad de $32,760.00 correspondientes a pagos quincenales de $819.00 durante un periodo de 20 meses. Asimismo, determinó que dicha deuda se saldaría mediante pagos mensuales de $1,000.00 hasta completar el total adeudado. Estableció, además, que los pagos comenzarían a efectuarse en el mes de julio de 2025 y se realizarían en o antes del día 30 de cada mes. Igualmente, impuso la cantidad de $500.00 por concepto de honorarios de abogado.

Inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

**PRIMER ERROR:**
**Erró el Honorable Tribunal de Primera Instancia al concluir que no procedía el acuerdo extrajudicial celebrado entre las partes, mediante el cual convinieron, durante el periodo de custodia compartida, que no se exigiría el pago de pensión alimentaria al existir una distribución equitativa del tiempo y de las obligaciones económicas respecto al menor. Este acuerdo fue cumplido por ambas partes durante más de dos años sin controversia, lo que evidencia su existencia, validez y eficacia jurídica. Al ignorar dicho acuerdo —sin análisis probatorio ni doctrinal alguno— el foro primario incurrió**

**en un error de derecho manifiesto que vulnera los principios de autonomía privada, buena fe contractual y estabilidad de las relaciones familiares funcionales.**

**SEGUNDO ERROR:**
**Erró además el Honorable Tribunal de Primera Instancia al imponer una suma fija en concepto de pensión retroactiva sin celebrar vista evidenciaria para determinar cuál fue la verdadera deuda alimentaria, en atención a las aportaciones efectuadas por el señor Linares durante el periodo en controversia. A pesar de que consta que el peticionario cubrió el plan médico del menor y otros gastos educativos, el Tribunal omitió evaluar esas contribuciones, privando al compareciente de su derecho a un debido proceso adjudicativo. Esta omisión procesal constituye un defecto sustancial que invalida la determinación recurrida y requiere su revocación por este Honorable Tribunal.**

El 10 de julio de 2025, emitimos *Resolución* mediante la cual le concedimos a la Recurrida un término para que presentara su alegato en oposición al recurso. Ha vencido el aludido plazo sin que la señora Zayas Rivera compareciera o solicitara prórroga a esos efectos.

En vista de lo anterior, adjudicamos los méritos del presente recurso sin el beneficio de su comparecencia.

**II.**

**A.**

Es doctrina reiterada en nuestra jurisdicción que la obligación de los padres de proveerles alimentos a sus hijos menores de edad está revestida del más alto interés público, con miras a salvaguardar el bienestar del menor. Díaz Rodríguez v. García Neris, 208 DPR 706, 717 (2022); Umpierre Matos v. Juelle Arbello, 203 DPR 254, 265 (2019); Ríos v. Narváez, 163 DPR 611, 618 (2004). Esta obligación de brindar alimentos es parte esencial del derecho a la vida, protegido por el Artículo II, Sección 7 de la Constitución de Puerto Rico. Torres Rodríguez v. Carrasquillo Nieves, 177 DPR 728, 738 (2009). Su génesis está cimentada en principios generalmente reconocidos de solidaridad humana, asociados al derecho natural y unida por imperativo de los vínculos familiares. Maldonado v. Cruz, 161 D.P.R. 1, 13 (2004). El deber de alimentar a los hijos menores de edad está regulado por varias fuentes estatutarias, cuyo fundamento cardinal lo es la relación paterno-filial. "*El derecho de los menores a reclamar alimentos, la obligación de los padres de proveerlos y la interpretación de*

*los tribunales para concederlos deben estar enmarcados en la relación paterno-filial legalmente establecida; no supeditada a uno u otro artículo del Código Civil.*" Chévere v. Levis, 150 DPR 525, 539 (2000) (énfasis en el original).

El Artículo 653 del Código Civil de Puerto Rico define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". 31 LPRA sec. 7531. La referida disposición estatutaria aclara que "cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". Íd. Vemos, pues, que nuestro ordenamiento jurídico hace la distinción entre un alimentista menor de edad y uno mayor de edad. En consonancia con lo anterior, el Artículo 655 de dicho cuerpo legal dispone que:

> Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso. 31 LPRA sec. 7533.

Cuando el alimentista es menor de edad, es el progenitor custodio quien tiene legitimación activa para reclamar el pago de la obligación alimentaria. Art. 661 del Código Civil, 31 LPRA sec. 7544. Ahora bien, cuando el menor adviene a la mayoría de edad, el custodio pierde dicha legitimación para reclamar o continuar una acción de cobro por los alimentos debidos, aunque hubiese sido quien inició la acción originalmente. Key Nieves v. Oyola Nieves, 116 DPR 261, 268 (1985).

De conformidad con lo anterior, se ha resuelto que el hijo alimentista que adviene a la mayoridad, es quien tiene a su haber la causa de acción de cobro de las pensiones vencidas y es quien tiene que reclamar los alimentos futuros a los que cree tener derecho, una vez cumple la mayoría de edad. En el caso de pensiones vencidas, por no haberse prestado las mismas mientras el alimentista era menor de edad, como acreedor de la

reclamación, tiene facultad para cobrarlas, transigirlas, condonarlas o cederlas. Martínez v. Rivera Hernández, 116 DPR 164, 169 (1985).

Con el objetivo de lograr el cumplimiento con el pago de la obligación de pensión alimentaria, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la "Ley Orgánica de la Administración para el Sustento de Menores", según enmendada, 8 LPRA sec. 501 *et seq.* (en adelante, "Ley de ASUME"). La antecitada ley reitera los principios adoptados por la jurisprudencia al disponer que los padres tienen un deber continuo de sustento y manutención de sus hijos menores de edad y que a base de ello, los tribunales están facultados para ordenarles pagar una suma justa y razonable por concepto de pensión alimentaria. 8 LPRA sec. 503. Así pues, las herramientas allí establecidas tienen una naturaleza inherentemente forzosa, cuyo fin ulterior es que los alimentantes respondan con sus obligaciones alimentarias. De León Ramos v. Navarro Acevedo, 195 DPR 157, 176 (2016).

Tanto el mencionado estatuto, como las Reglas de Procedimiento Civil, proveen mecanismos para asegurar la efectividad del pago de las pensiones alimentarias. Entre éstos se encuentran los siguientes: la acción independiente en cobro de dinero, la emisión de órdenes de retención de ingresos, el embargo de bienes, retención de ingresos de reintegros de contribuciones estatales o federales, imposición de fianza u otra garantía de pago determinada, solicitud de información sobre crédito, limitación a la expedición de licencias (de conducir vehículos de motor, ocupacional o profesional, tiro al blanco, venta de artículos, de portar armas, contratación y empleo con el Gobierno) o la solicitud de desacato civil o criminal. *Véanse*, Artículos 23-37 de la Ley Núm. 5 de 30 de diciembre de 1986, *supra*; y Reglas 51 y 56 de Procedimiento Civil, 32 LPRA Ap. V, R. 51 y R. 56.

**B.**

La Sección 11 del Artículo II de nuestra Constitución no permite el encarcelamiento por deudas para vindicar intereses privados. Sin embargo, en un balance de intereses, el Tribunal Supremo de Puerto Rico reconoció una sola instancia que permite el encarcelamiento bajo dichas

circunstancias, a saber: en casos de alimentos. <u>Viajes Lesana, Inc. v. Saavedra</u>, 115 DPR 703, 709 (1984); <u>Álvarez v. Arias</u>, 156 DPR 352, 372 (2022). Sostuvo nuestro máximo foro judicial que "[m]ás que forzar el pago de una deuda de lo que se trata en esos casos es de obligar al descargo de una responsabilidad de mayor rango, de un deber revestido de gran interés público". <u>Viajes Lesana, Inc. v. Saavedra</u>, *supra*, pág. 709.

Es menester destacar que el encarcelamiento no es el resultado de adeudar una cuantía determinada de dinero, sino del incumplimiento con una orden judicial a satisfacer la obligación de pensión alimentaria impuesta. <u>Umpierre Matos v. Juelle Arbello</u>, 203 DPR 254, 265 (2019). Por tanto, "el mecanismo de desacato civil procura garantizar **el cobro de las pensiones atrasadas**". <u>Íd</u>. (énfasis suplido). Aunque tiene un propósito reparador, "**debe utilizarse con prudencia por la privación de libertad que conlleva, y limitado a aquellos casos en que hubiera una desobediencia voluntaria y obstinada a una orden o sentencia concediendo alimentos y en que la continuada encarcelación del desacatador pueda surtir los efectos de dar al alimentista la reparación necesaria**". <u>Sosa Rodríguez v. Rivas Sariego</u>, 105 DPR 518, 522 (1976) (énfasis suplido).

Por consiguiente, la Ley de ASUME incorpora el desacato civil "como uno de los mecanismos para compeler al cumplimiento de las órdenes emitidas por el Tribunal, las emitidas por el Administrador o el Juez Administrativo y para hacer efectiva cualquier orden de pensión alimentaria para beneficio de un o una menor de edad". 8 LPRA sec. 529(2). A esos efectos, la referida legislación fija los parámetros para la reclusión de un alimentante incurso en desacato. En particular, dicha pieza legislativa contempla tanto la reclusión carcelaria y la domiciliaria, como medidas coercitivas para asegurar el pago de las pensiones alimentarias.

**III.**

En el presente caso, el señor Linares Núñez nos solicitó la revocación de la *Resolución Enmendada* del TPI en la que se le encontró incurso en desacato por no cumplir con el pago de la pensión alimentaria objeto de esta controversia.

En resumidas cuentas, el Peticionario alegó que el foro primario erró al: (1) rechazar el acuerdo extrajudicial alcanzado entre las partes, mediante el cual pactaron la forma de cubrir los gastos durante el periodo de custodia compartida e (2) imponer una suma fija en concepto de pensión retroactiva sin celebrar vista evidenciaria para determinar cuál fue la verdadera deuda alimentaria, en atención a las aportaciones efectuadas por el señor Linares Núñez durante el período en controversia y no permitirle presentar evidencia relacionada con el alegado acuerdo extrajudicial pactado por las partes. Veamos.

Es hartamente conocido en nuestro ordenamiento jurídico la importancia de cumplir con la obligación del pago de pensión alimentaria impuesta. Esta obligación, es de tan alto interés público, que nuestro Tribunal Supremo concede –como única excepción– para el arresto **a aquella parte que incumpla con la orden del tribunal sobre el pago de la pensión**. De hecho, nuestro Tribunal Supremo ha establecido que este mecanismo debe ser utilizado con mesura, debido a las repercusiones legales que acarrea. Por tener un fin ulterior reparador, su uso debe estar limitado a aquellos casos en que hubiera una "**desobediencia voluntaria y obstinada a una orden o sentencia concediendo alimentos y en que la continuada encarcelación del desacatador pueda surtir los efectos de dar al alimentista la reparación necesaria**". Sosa Rodríguez v. Rivas Sariego, *supra*, pág. 522 (énfasis suplido).

En su primer señalamiento de error, el Peticionario sostiene que el TPI cometió un error de derecho al concluir que no procedía el acuerdo extrajudicial presuntamente celebrado entre las partes, mediante el cual convinieron, durante el periodo de custodia compartida, que no se exigiría el pago de pensión alimentaria al existir una distribución equitativa del tiempo y de las obligaciones económicas respecto al menor. Sostiene que el foro *a quo* vulneró los principios de autonomía privada, de buena fe contractual y estabilidad de las relaciones familiares funcionales. Para justificar sus planteamientos expone que la juzgadora de instancia no dedicó

en la *Resolución Enmendada* un análisis pormenorizado de la existencia del aludido acuerdo extrajudicial. No nos convence su postura. Nos explicamos.

A poco que examinemos los documentos que obran en el expediente ante nuestra consideración notamos que la vista de desacato fue una audiencia evidenciaria en la que las partes tuvieron la oportunidad de presentar la prueba pertinente a sus respectivas teorías, a saber: (1) la señora Zayas Linares aportó aquella evidencia relacionada a que entre las partes hubo cambio de custodia *de facto*, en el que el menor dejó de pernoctar en la residencia del señor Linares Núñez; y (2) el Peticionario expuso su teoría y la prueba relacionada a ésta sobre la existencia del acuerdo extrajudicial en el que las partes convinieron no exigirse el pago de pensión alimentaria mientras existió una distribución equitativa del tiempo respecto al menor.

De hecho, luego de considerar la prueba que le fue presentada, la juzgadora de instancia determinó que a partir del mes de julio de 2022 se modificó de facto la custodia compartida en tiempo igual, toda vez que el menor D.D.L.Z. dejó de pernoctar en la residencia del Peticionario. Dicha determinación –por sí sola– revela claramente que, a base de la prueba aportada por las partes, el TPI entendió que la señora Zayas Rivera demostró el cambio en custodia que activó la obligación de pago por parte del señor Linares Núñez. Precisamente por ello fue que concluyó que la obligación alimentaria establecida mediante la *Resolución* del 21 de mayo de 2019 se activó a partir del mes de agosto de 2022.

Definitivamente, ambas conclusiones implicaron que el foro de instancia coligió que el señor Linares Núñez no aportó prueba conducente a establecer su teoría sobre la extensión del acuerdo extrajudicial desde marzo de 2020 a marzo de 2024. Si bien de la *Resolución Enmendada* no se desprende una expresión concreta del Tribunal sobre la inexistencia del aludido acuerdo, lo cierto es que a la luz de las conclusiones de derecho a las que arribó el foro recurrido se demuestra que, tras el desfile de la evidencia, el Peticionario falló en probar su planteamiento de conformidad con el estándar de prueba requerido.

Sobre este particular, es de singular importancia establecer que el señor Linares Núñez en ningún momento impugnó ante este Tribunal de Apelaciones la credibilidad que le merecieron las versiones de los testigos a la juzgadora de los hechos, ni cuestionó la apreciación de la prueba ni tampoco solicitó permiso para presentar una transcripción de la prueba oral presentada o una estipulación narrativa de la evidencia. Reiteramos, el Peticionario a lo único que aludió en su recurso ante nos fue "un error de derecho manifiesto que vulnera los principios de autonomía privada, buena fe contractual y estabilidad de las relaciones familiares funcionales".[1] Ante la ausencia de cuestionamientos relacionados con la apreciación de la prueba y de las herramientas revisoras para evaluar la evidencia que tuvo ante sí el foro de instancia, no hallamos razones en derecho que nos guíen a rechazar la cuantía de la deuda alimentaria que estableció el TPI.

Es menester destacar que, mediante la *Resolución* del 21 de mayo de 2019, el foro *a quo* fijó una pensión alimentaria de $819.00 quincenales a favor del menor D.D.L.Z., obligación que el señor Linares Núñez estaba legalmente obligado a cumplir. Si bien en un momento existió un régimen de custodia compartida, lo cierto es que, a partir del mes de julio de 2022 y según la prueba recibida por la juzgadora de instancia durante la vista de evidenciaria de desacato, dicha custodia compartida en tiempo igual se modificó *de facto*, ya que el menor D.D.L.Z. dejó de pernoctar en la residencia del señor Linares Núñez. A pesar de ello, el Peticionario cesó el pago de la pensión alimentaria, incumpliendo con una obligación previamente establecida judicialmente.

Relacionado a lo anterior, tampoco procede que se ordene la celebración de una nueva vista evidenciaria, como plantea el señor Linares Núñez en su segundo señalamiento de error, bajo el fundamento de que no se le permitió la presentación de prueba dirigida a establecer las aportaciones económicas que realizó durante el periodo en controversia. Nos explicamos.

---

[1] *Véase*, Recurso de *Certiorari*, pág. 9.

Para justificar su postura, el Peticionario arguye que tenía derecho, como mínimo, a que se le permitiera probar qué parte de esa alegada obligación ya había sido satisfecha total o parcialmente. Sostuvo que el tribunal de instancia procedió a fijar una deuda alimentaria sin abrir a prueba esa alegación, sin admitir evidencia documental o testifical y sin ponderar si esos gastos correspondían a necesidades propias del menor. Añadió que esa omisión procesal no solo lo priva de una defensa sustancial, sino que también fija una deuda artificialmente inflada, generando un enriquecimiento indebido en favor de la Recurrida.

El planteamiento jurídico del señor Linares Núñez se centra en la denegatoria del Tribunal de permitirle aportar evidencia sobre las aportaciones que presuntamente hizo durante el periodo comprendido entre agosto de 2022 a marzo de 2024. A pesar de ser este el argumento esgrimido por el Peticionario en su recurso, por ninguna parte de su exposición arguye que efectuó un ofrecimiento de prueba, luego de que el TPI no le permitiera presentar la evidencia alusiva a los gastos aportados por éste que debían ser considerados para propósitos del cálculo de la deuda alimentaria. Simplemente, se aduce a un error de derecho sin más. En otras palabras, no existe en el récord ninguna manifestación o tan siquiera expresión de que el señor Linares Núñez hubiera efectuado para preservar el récord y poder invocar un error por parte del Tribunal al negarse a admitir prueba de esa índole.

No olvidemos que el inciso (a) de la Regla 105 de las de Evidencia, 32 LPRA Ap VI, R. 105, dispone que no se dejará sin efecto una determinación errónea respecto a la admisión o exclusión de cierta evidencia, ni se revocará sentencia o decisión alguna, salvo que: (1) la parte perjudicada por la admisión o exclusión de la evidencia haya cumplido con los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 de Evidencia y (2) el tribunal que considera el señalamiento de error estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. Por si fuera poco, no contamos con una transcripción de la prueba o exposición

narrativa de la misma que nos permita evaluar concretamente un planteamiento de derecho que el traído por el Peticionario.

En fin, la suma reclamada no surge de un cálculo arbitrario o impugnado, sino que se deriva directamente del incumplimiento de una obligación establecida por el Tribunal. En consecuencia, el foro primario no abusó de su discreción al ordenar el pago de la suma adeudada, sin que fuera necesario celebrar una vista evidenciaría **adicional**, pues las partes presentaron la prueba que entendieron pertinente para establecer sus correspondientes teorías con respecto a la deuda alimentaria reclamada*.*

Ahora bien, a pesar de que hemos concluido que la determinación sobre la pensión alimentaria se sostiene en derecho, colegimos que el foro de instancia actuó prematuramente al hallar incurso de desacato al señor Linares Núñez. De conformidad con el tracto de los hechos acaecidos en el caso de autos, no fue sino hasta el 26 de octubre de 2023 que la Recurrida presentó moción ante el TPI para argumentar que posterior al cambio en custodia *de facto* el Peticionario se había negado a contribuir con los gastos del menor, pero que en el mes de abril de 2024 había reiniciado a efectuar los pagos de pensión alimentaria. Luego de la correspondiente oposición del señor Linares Núñez fue que se celebró la vista de desacato para dilucidar si correspondía el pago de la pensión durante el periodo en que cambiaron las relaciones filiales con el menor.

Así, y tras la celebración de dicha audiencia, fue que el foro *a quo* concluyó que, en efecto, procedía el pago de la pensión impuesta en el 2019 por el periodo correspondiente entre agosto de 2022 a marzo de 2024. En otras palabras, fue mediante la *Resolución Enmendada* recurrida que por primera vez se determinó la existencia de la deuda y se procedió a establecer un plan de pago a favor del menor. A pesar de que fue en ese momento que el Peticionario advino en conocimiento del monto de la deuda, pues este actuó bajo el entendido de que entre las partes de epígrafe permanecía vigente el acuerdo extrajudicial, el TPI decidió hallarlo incurso en desacato sin más, con las consecuencias legales que ello representa.

Concluimos, pues, que dicha actuación rebasó los límites jurisprudenciales que nos ha impuesto el Tribunal Supremo al exigirnos a los tribunales a utilizar mesuradamente el desacato civil por el impago de una pensión alimentaria. Nótese que la utilización de este mecanismo legal procede cuando se demuestra que el alimentante ha demostrado **desobediencia voluntaria y obstinada con una orden o sentencia concediendo alimentos y que la encarcelación del desacatador pueda surtir los efectos de dar al alimentista la reparación necesaria**.

Un sosegado análisis de las incidencias procesales en el caso de autos demuestra que no estamos ante un escenario en el que el Peticionario demostró un grado de insubordinación deliberada para incumplir la *Resolución* del 21 de mayo de 2019. De hecho, no se desprende de los documentos que obran en los autos que el señor Linares Núñez hubiera sido apercibido de que su incumplimiento con el pago de la pensión acarrearía encontrarlo incurso en desacato. Sencillamente, en la misma determinación en la que se concluyó que existía la deuda y la cuantía de la misma, se determinó imponerle dicha drástica medida.

Ante tales circunstancias, procede que se deje sin efecto la determinación de hallar incurso en desacato al señor Linares Núñez y permitirle el espacio para que éste cumpla con el plan de pago impuesto por la juzgadora de instancia. Después de todo, mantener la determinación aquí impugnada no propendería al propósito reparador que se persigue con el desacato por deuda alimentaria. Este caso no presenta una situación en la que la obstinación en dejar de pagar la pensión correspondiente es palpable e innegable.

Ahora bien, la conclusión a la que hemos arribada en nada afecta a que, en un futuro, si se demuestra que el señor Linares Núñez ha exhibido la actitud que nuestro ordenamiento proscribe en cuanto al pago de la pensión a favor de su hijo, se le pueda solicitar al TPI hallarlo incurso en desacato con las consecuencias legales que ello acarrea.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de presente dictamen, *expedimos* el auto de *certiorari* ante nos, *confirmamos* la *Resolución Enmendada* en cuanto a la existencia y monto de la deuda alimentaria y *revocamos* aquella parte del aludido dictamen mediante el cual se halló al Peticionario incurso en desacato.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones