VIAJES LESANA, INC., demandante y recurrida, *v.* ÁNGEL M. SAAVEDRA y EVELYN ANADÓN, demandados y recurrentes.

*Número:* O-84-149      *Resuelto:* 25 de octubre de 1984

704

*Nydia González Ortiz*, abogada de los peticionarios; *Juan Muñiz Belbrú*, abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Este caso plantea la necesidad de definir el significado de la cláusula del Art. II, Sec. 11 de nuestra Constitución, rela-

tiva a que "nadie será encarcelado por deuda", así como el alcance del Art. 1811 de nuestro Código Civil, 31 L.P.R.A. sec. 5171, dentro del contexto siguiente de hechos.

En el curso de un pleito de interdicto las partes sometieron una estipulación sobre transacción. Se dictó sentencia de conformidad. En la estipulación los demandados recurrentes se comprometieron a pagar a Viajes Lesana, Inc. determinada cantidad por el traslado de unos teléfonos, así como a satisfacer el costo de las llamadas efectuadas antes del traslado. Los recurrentes incumplieron el acuerdo. El tribunal de instancia fijó un plazo para el pago de lo convenido. Al no cumplir los recurrentes esta orden, Viajes Lesana solicitó que se les declarase incursos en desacato. Tras la vista correspondiente, el tribunal ordenó el encarcelamiento requerido. Los recurrentes alegan ante este foro que tal resolución infringe la referida prohibición constitucional del encarcelamiento por deuda.

El encarcelamiento por deuda tiene una larga historia, tanto en los derechos romanogermánicos como en los de sello común. D. F. Clemente de Diego, *Transmisión de las Obligaciones*, Madrid, Lib. Gen. de V. Suárez, 1912, págs. 64–85; R. Ford, *Imprisonment for Debt*, 25 Mich. L. Rev. 24 (1926); *Civil Contempt*, 9 *Halsbury's Laws of England*, 4ta ed., Londres, Ed. Butterworths, 1974, págs. 47–52.

En el antiguo Derecho romano, la persona del deudor respondía por sus obligaciones. Para el 326 *A.D.*, sin embargo, ya se completaba el paso del principio de la responsabilidad personal al de la sujeción patrimonial. Los bienes del deudor, no su persona, respondían del cumplimiento de sus obligaciones. Caído el Imperio Romano, se retornó en Occidente al concepto de la prisión por deudas. La práctica subsistió por siglos. Se le reconoció, bajo el nombre de apremio personal (*contrainte par corps*), en el propio Código Civil francés de 1804. La Novísima Recopilación española de 1805, Ley XII, Art. XXVIII, Libro XI, admitía la institución. No fue hasta la segunda mitad del siglo dieci-

nueve que se impuso el principio de la responsabilidad patrimonial. Véanse: H. F. Jolowicz y B. Nicholas, *Historical Introduction to the Study of Roman Law*, 3ra ed., Cambridge, Univ. Press, 1972, págs. 164, 187 *et seq.*; J. Castán Tobeñas, *Derecho civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. 3, pág. 260 y ss.; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1976, T. I, Vol. II, pág. 12 y ss.

La prisión por deudas civiles o comerciales se abolió en Francia por Ley de 22 de julio de 1867. Para la situación actual, incluso la discusión de excepciones permitidas hoy, véanse: B. Starck, *Droit Civil—Obligations*, París, Librairies Techniques, 1972, pág. 607 *et seq.*; A. Weill y F. Terré, *Droit Civil—Les Obligations*, 2da ed., París, Ed. Dalloz, 1975, pág. 892 *et seq.*; G. Marty y P. Raynaud, *Droit Civil*, París, Ed. Sirey, 1962, T. II, Vol. 1, pág. 685 y ss.([1]) La supresión del encarcelamiento por deuda ocurrió en Italia diez años más tarde por Ley de 6 de diciembre de 1877. G. Del Vecchio, *Acerca del resarcimiento del daño en relación con la pena* (E. Galán y Gutiérrez, traductor), 189 Rev. Gen. Leg. Jur. 259, 268 n. 6 (1951).

En España la abolición del apremio personal tardó varios años. En el proyecto de Código Civil de 1851 la institución se mantiene, aunque suavizada un tanto. F. García Goyena, *Concordancias, motivos y comentarios del Código Civil español* (reimpresión ed. de 1852), Zaragoza, Ed. Cometa, 1974, pág. 972 *et seq.* En el Art. 1.911 del Código Civil español de 1889 ya se decía, sin embargo: "Del cumplimiento de las obligaciones responde el deudor con todos sus bienes presentes y futuros." Este artículo, del cual es copia fiel el Art. 1811 de nuestro Código Civil, 31 L.P.R.A. sec. 5171, adopta el principio de la responsabilidad patrimonial. Castán, *op. cit.*, pág. 263; L. Rodríguez-Arias Bus-

---

([1]) Consúltense el Art. 1142 del Código Civil, los Art. 749 al 762 del Código de Procedimiento Penal y el 467 del Código Penal franceses.

tamante, *Comentando el Artículo 1.911 de nuestro Código Civil*, 189 Rev. Gen. Leg. Jur. 29, 31 (1951). Es imprescindible acudir a su historia, dada la naturaleza críptica de su texto, para establecer su relación con el antiguo apremio personal. La simple lectura del Art. 1811 no revela su verdadero enlace con la prohibición del encarcelamiento por deudas.

La prisión por deudas fue por siglos parte del Derecho Común inglés, aunque no en sus inicios. La institución fue parcialmente abolida por la *Debtors Act 1869* (32 & 33 Vict. c. 62). Para la situación actual, consúltese también la *Magistrates' Courts Act 1980* (1980 c. 43), 50(2) *Halsbury's Statutes of England*, 3ra ed., Secs. 79 y 96 (1981).

Lo indicado hasta ahora revela la razón por la cual la Constitución de Estados Unidos no prohibió la prisión por deudas. La institución, como en otros países, era parte del ordenamiento jurídico de la época. Para 1830, en que comienza un movimiento de reforma, las personas encarceladas por deudas, algunas montantes a menos de un dólar, se contaban por miles. La situación fue mejorando lentamente, aunque varias constituciones estatales aún no se han pronunciado sobre el particular y existe gran variedad de criterios sobre las circunstancias en que es impermisible el encarcelamiento civil. Ford, *op. cit.*, pág. 29 *et seq.* Para el estatuto que gobierna las cortes federales, proveniente, con enmiendas, de 1896, véase 28 U.S.C.A. sec. 2007.

En Puerto Rico hemos vivido y estamos viviendo una situación curiosa. En la Ley Foraker de 1900 no se incluyó disposición alguna sobre el particular, como tampoco en la versión de la Carta de Derechos aprobada por la Asamblea Legislativa en 1902. De 1900 a 1917, por tanto, el único dique contra el apremio personal era el Art. 1811 (entonces numerado 1812) del Código Civil.[2]

---

[2] Considérese sobre este particular lo dispuesto en los Arts. 143 y 144 del Código de Enjuiciamiento Civil de la época. *Ex Parte Carreras y El Pueblo*, 39 D.P.R. 488 (1929).

En la Ley Jones de 1917, en el sexto párrafo de la Sec. 2, se dispuso que "ninguna persona será encarcelada por deudas". No hay indicación histórica de que esta disposición se debiera a la influencia de la tradición civilista. El antecedente a todas luces de la disposición fue el lenguaje idéntico de la Ley Orgánica de las Filipinas, Ley de 1 de julio de 1902, c. 1369, 32 Stat. 691. La Ley Jones de 1917 fue a su vez el modelo del que se extrajo la cláusula que nos ocupa de la Carta de Derechos de nuestra Constitución.

Es característica peculiar de nuestro ordenamiento jurídico, por tanto, que el principio de la responsabilidad patrimonial deriva de dos fuentes: el Art. 1811 de nuestro Código Civil y el Art. II, Sec. 11 de la Constitución de Puerto Rico. Contra la prisión por deudas existen dos escudos en nuestro país. Hay que penetrar ambos para alcanzar la persona del deudor.

El caso de autos no presenta dificultad alguna, bien se mire desde el punto de vista del Art. II, Sec. 11 de la Constitución o a la luz del Derecho civil. Bajo ambos procede la revocación de la resolución recurrida por conducir a una prisión por deudas.

En *Freeman* v. *United States*, 217 U.S. 539, 544 (1910), el Tribunal Supremo de Estados Unidos tuvo oportunidad de interpretar la Ley Orgánica de las Filipinas sobre el particular. El Tribunal estableció, al excluir del alcance de la prohibición los estatutos penales que castiguen el abuso de confianza y otras clases de apropiaciones de dinero, que el propósito de la cláusula es "evitar el encarcelamiento de deudores por obligaciones que surjan de contratos". (Traducción nuestra.) La jurisprudencia estatal acepta igualmente que la prohibición aplica a encarcelamiento por deudas contractuales, aunque existe diversidad de criterios sobre su aplicabilidad al resarcimiento por daños y perjuicios, el fraude, la infracción de deberes fiduciarios y a algunos otros asuntos. D. B. Dobbs, *Contempt of Court: a Survey*, 56 Cornell L. Rev. 183, 268 *et seq.* (1971); Comentario, *Mod-*

*ern Survival of Imprisonment for Debt,* 37 Yale L.J. 509 (1928); E. R. Parnass, *Imprisonment for Civil Obligations in* Illinois, 15 Ill. L. Rev. 559 (1921); Ford, *op. cit.*

En el Derecho civil la prisión por deudas es también improcedente no sólo en el caso de las obligaciones contractuales sino también en las de naturaleza *ex delicto* y aquellas otras expuestas en el libro cuarto del Código. Castán, *op. cit.*, pág. 262 *et seq.*; Puig Brutau, *op. cit.*, pág. 12 *et seq.*; Del Vecchio, *op. cit.*, págs. 268–269; Starck, *op. cit.*, pág. 607; Marty y Raynaud, *op. cit.* pág. 685.

█ Tanto en el Derecho civil como en el común se permite el encarcelamiento por deudas en determinadas situaciones, no siempre las mismas en ambos derechos. No está ante la consideración de este Tribunal enumerarlas. Basta con señalar que un principio común informa estas excepciones. El encarcelamiento no se produce en esos casos para vindicar intereses primordialmente privados. La excepción nace por el valor público que la permea. Más que forzar el pago de una deuda de lo que se trata en esos casos es de obligar al descargo de una responsabilidad de mayor rango, de un deber revestido de gran interés público. Ésta es la explicación, por ejemplo, de la validación en tantas jurisdicciones, incluso en Puerto Rico, del uso del desacato civil bajo ciertas condiciones para provocar el cumplimiento de pensiones alimenticias.

Nuestra jurisprudencia se ha ocupado en diversas ocasiones de la prohibición de prisión por deudas. En *Frau* v. *Canals*, 8 D.P.R. 120 (1905), el Tribunal no permitió el apremio personal para hacer efectivos unos alimentos provisionales en un caso de divorcio. En *López* v. *Corte de Distrito de Guayama*, 31 D.P.R. 137 (1922), se dejó a *Frau* v. *Canals* sin efecto. Véanse también: *Espinosa* v. *Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901, 906–908 (1951); *Sosa Rodríguez* v. *Rivas Sariego*, 105 D.P.R. 518 (1976). En *Villa* v. *Corte*, 45 D.P.R. 879, 890–891 (1933), se señala la diferencia entre el concepto "deuda" y el de "deber público". Expresó el Tribu-

nal, en palabras que indican también la amplitud en Puerto Rico de las obligaciones no ejecutables por la vía del encarcelamiento:

> Los tribunales asignan diversas razones para sostener que la obligación de alimentar no es una deuda dentro de las disposiciones constitucionales que proh[í]ben encarcelamiento por deuda. Una orden concediendo alimentos es simplemente un medio de hacer cumplir un deber que el marido tiene contraído tanto con el público como con su esposa. La prohibición constitucional se aplica únicamente a deudas que se derivan de contratos expresos o implícitos, o de responsabilidades por culpa y negligencia. La prisión se decreta en realidad por la resistencia a la orden de la corte, cuando la persona que desobedece tiene medios de cumplirla,[3] y no simplemente por haber dejado de pagar el dinero. (Escolio nuestro.)

La cita exige dos advertencias. La determinación de lo que constituye una "deuda" para los fines del Art. II, Sec. 11 de la Constitución, así como bajo el Art. 1811 del Código Civil, no es un ejercicio en puro razonamiento abstracto. La tabla de valores de la comunidad concernida es la que provee la clave. Si una obligación privada tiene un carácter tan acentuado de deber social que lo segundo ahoga o sobrepasa lo primero, como en el caso de las pensiones alimenticias, la vía del apremio personal puede estar disponible. Las excepciones a la norma general contraria a la prisión por deudas son contadas, tanto en el Derecho civil como el común.

En segundo término, el incumplimiento de una orden judicial conlleva usualmente la sanción del desacato, mas no puede utilizarse la resistencia al mandato de una corte como medio para lograr la prisión por deudas, inasequible por otras vías. De ser ello posible bastaría con que un tribunal ordenase, bajo apercibimiento de desacato, que se pagase cualquier deuda ordinaria. Hace ya casi un siglo que

---

[3] Sobre la condición de medios de cumplirla consúltese la legislación francesa y británica citada en el curso de la opinión. Véase también a *Espinosa* v. *Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901, 907–908 (1951).

el Código Civil les cerró este camino a los acreedores y a los propios tribunales al adoptar el principio de la responsabilidad patrimonial, norma que adquirió en 1952 rango constitucional.

En el caso de autos la obligación concernida era una deuda contractual ordinaria no revestida de interés público preeminente. En tales circunstancias el tribunal a quo carecía de facultad para ordenar, por desacato a su requerimiento, el encarcelamiento de los deudores.

*Se expedirá el auto y se revocará la resolución recurrida.*