ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| D C VERRENGIA T/C/C D C STERLIN<br><br>RECURRIDA<br><br>v.<br><br>JUSTIN ANTHONY VERRENGIA<br><br>PETICIONARIO | TA2026CE00103 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2022RF00483<br><br><br>Sobre: Custodia, Pensión Excónyuge y Pensión Alimentaria |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece ante nos, por derecho propio, el señor Justin Anthony Verrengia (en adelante, peticionario), mediante *Petición de Certiorari con moción de Emergencia para suspender la ejecución*, y solicita que revisemos una *Orden* emitida el 23 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario). Mediante dicho dictamen, el foro primario ordenó al peticionario pagar una deuda por concepto de pensión alimentaria ascendente a la suma de $10,208.91, advirtiéndole que, en caso de incumplimiento, ordenaría que este mostrara causa.

Por los fundamentos que exponemos a continuación, denegamos la solicitud en auxilio de jurisdicción, expedimos el recurso de *certiorari* incoado y confirmamos la determinación recurrida.

**I.**

El 23 de marzo de 2022, la señora D C Verrengia (en adelante, recurrida) instó una *Demanda*[1] sobre custodia, alimentos de menor y pensión excónyuge contra el peticionario. En su reclamación solicitó, entre otros remedios, la custodia exclusiva de la hija menor de edad de ambos, el establecimiento de un plan de relaciones paternofiliales, la fijación de una pensión alimentaria a favor de la menor y la concesión de una pensión excónyuge a su favor.

El 20 de mayo de 2022, el peticionario, por conducto de representación legal, presentó su *Contestación a Demanda y Reconvención*[2], en la cual solicitó la celebración de una vista para atender los asuntos sobre la custodia y las relaciones paternofiliales, así como que el caso fuera referido a la Examinadora de Pensiones Alimentarias (EPA) para la determinación correspondiente sobre alimentos.

Tras varios trámites procesales, que no son pertinentes al asunto ante nos, el 18 de agosto de 2025 el peticionario presentó un *Moción para Terminación de Representación legal, Entrada de Comparecencia Pro Se, y Solicitud de Interprete Designado por el Tribunal*[3], en la que expresó su intención de representarse por derecho propio debido a las divergencias de criterio que mantenía con la representación legal que tenía en ese entonces. No obstante, ese mismo día el TPI emitió una *Orden*[4] mediante la cual aceptó la renuncia de la representación legal y concedió al peticionario un término de treinta (30) días para anunciar nueva representación legal, rechazando así que el peticionario se representara por derecho propio.

Posteriormente, el 9 de septiembre de 2025, el peticionario presentó una *Moción para Modificar Pensión Alimentaria y Pensión Conyugal*

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[2] Entrada Núm. 34 del SUMAC del TPI.
[3] Entrada Núm. 540 del SUMAC del TPI.
[4] Entrada Núm. 542 del SUMAC del TPI.

*retroactivamente basada en falsedad y fraude al Tribunal*[5]. En síntesis, requirió que se recalcularan dichas obligaciones desde el año 2022, alegando que la recurrida había ocultado o tergiversado información relacionada con sus ingresos, y pidió que se imputaran ingresos a esta última. El TPI ordenó que dicha moción fuera referida a la EPA.[6]

Entretanto, la recurrida presentó una *Urgente Solicitud de Orden y de Cese y Desista*[7], en la que solicitó, entre otros remedios, que se ordenara al peticionario abstenerse de presentar nuevos escritos hasta tanto cumpliera con la orden de anunciar representación legal, así como que se le ordenara cumplir con la pensión alimentaria previamente establecida. En atención a ello, mediante *Orden*[8] del 11 de septiembre de 2025, el TPI reiteró su determinación de que el peticionario debía anunciar nueva representación legal. Luego, el 24 de septiembre de 2025, el foro primario dispuso que no atendería las mociones presentadas por el peticionario hasta tanto este cumpliera con dicha orden, determinación que mantuvo ante la continua presentación de escritos por parte del peticionario sin haber anunciado representación legal.[9]

En cuanto a la solicitud de modificación de pensión alimentaria, la EPA había señalado una vista de alimentos para el 30 de octubre de 2025.[10] Sin embargo, ante el incumplimiento del peticionario con anunciar nueva representación legal, dicha vista fue dejada sin efecto mediante *Orden*[11] emitida el 29 de octubre de 2025 por la Examinadora de Pensiones Alimentarias.

---

[5] Entrada Núm. 567 del SUMAC del TPI.
[6] Entrada Núm. 568 del SUMAC del TPI.
[7] Entrada Núm. 570 del SUMAC del TPI.
[8] Entrada Núm. 572 del SUMAC del TPI.
[9] Entrada Núm. 578 del SUMAC del TPI. Véanse, además, Entradas Núm. 579, 584, 586, 593, 602, 603, 604 y 605 del SUMAC del TPI.
[10] Entrada Núm. 555 del SUMAC del TPI.
[11] Entrada Núm. 606 del SUMAC del TPI.

Más adelante, el 12 de enero de 2026, la recurrida presentó una *Urgentísima Solicitud de Orden por Desacato*[12]*,* en la que alegó que el peticionario adeudaba la suma de $10,208.81 por concepto de pensión alimentaria devengada y no pagada. Según expuso, desde abril de 2025 el peticionario había reducido unilateralmente el pago de la pensión alimentaria a la cantidad de $823.57, a pesar de que la pensión vigente había sido fijada en $1,823.57.

En atención a lo anterior, el 23 de enero de 2026 el TPI emitió una *Orden*[13] mediante la cual ordenó al peticionario pagar la suma adeudada en un término de diez (10) días, apercibiéndole que, de no hacerlo, el tribunal emitiría una orden para que mostrara causa.

El 26 de enero de 2026, el peticionario presentó una *Moción de emergencia para suspender la ejecución*[14] mediante la cual solicitó, entre otros asuntos, que se suspendiera la ejecución de la *Orden* emitida el 23 de enero de 2026 y que se señalara una vista para atender la modificación de la pensión alimentaria y su alegada capacidad de pago.

Ese mismo día, el foro primario emitió *Orden*[15] en la que dispuso que el peticionario contaba con un término de diez (10) días para el pago total de la deuda reclamada y le recordó, además, que debía anunciar nueva representación legal para que pudiera continuar el trámite de revisión de alimentos ante la EPA.

Inconforme con dicha determinación, el peticionario acudió ante este Foro mediante el recurso de epígrafe. En este, el peticionario no señala errores específicos imputables al foro primario; no obstante, sostiene, en síntesis, que la ejecución inmediata de la orden —sin la celebración previa de una vista para evaluar su alegada capacidad actual de pago ni atender su solicitud de

---

[12] Entrada Núm. 617 del SUMAC del TPI.
[13] Entrada Núm. 623 del SUMAC del TPI.
[14] Entrada Núm. 624 del SUMAC del TPI.
[15] Entrada Núm. 625 del SUMAC del TPI.

modificación de pensión— podría conllevar la imposición de sanciones coercitivas, como el desacato o encarcelamiento, lo que le causaría un perjuicio grave e irreparable. Solicita, además, que este Foro paralice la ejecución de la orden con el propósito de mantener el *statu quo* del caso en lo que se atiende el recurso.

## II.

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372 (citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016)).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera

Instancia, salvo en contadas excepciones. *Scotiabank de Puerto Rico v. Zaf Corporation*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari.* En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

### B. Manejo del caso por el Tribunal de Primera Instancia

Es doctrina reiterada que los jueces de instancia gozan de amplia discreción y flexibilidad en el manejo cotidiano y la tramitación de los asuntos que se ventilan ante sus salas. *BPPR v. SLG Gómez-López,* 213 DPR 314, 334 (2023); *In re Collazo I,* 159 DPR 141, 150 (2003); *Vives Vázquez v.* ELA, 142 DPR 117, 141 (1996). La deferencia a su criterio responde al principio de que los tribunales apelativos no deben sustituir ni dirigir la conducción del trámite ordinario de los casos que corresponden al foro primario. *BPPR v. SLG Gómez-López, supra,* citando a *Mejías Montalvo v. Carrasquillo Martínez,* 185 DPR 288, 306-307 (2012). Como es sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para adoptar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Id.*

En consecuencia, la norma general dispone que los foros apelativos no intervendrán en la discreción de los foros primarios, salvo que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-López, supra,* pág. 334; *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 273 (2021). El uso adecuado de esa discreción judicial está estrechamente

relacionado con el concepto de razonabilidad. *BPPR v. SLG Gómez-López, supra,* pág. 335; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013); *Rivera Durán v. Banco Popular,* 152 DPR 140, 155 (2000).

No obstante, la deferencia cede cuando se acredita que el tribunal incurrió en un abuso de discreción, actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. SLG Gómez-López, supra; Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Por lo tanto, si en la solicitud ante nuestra consideración no concurren tales criterios y la actuación del foro primario cuenta con un fundamento razonable y no afecta derechos sustanciales de las partes, debe prevalecer el criterio del juez de instancia, quien es, a fin de cuentas, el llamado a dirigir el proceso. *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

### C. Obligación alimentaria

En nuestro ordenamiento jurídico es doctrina reiterada que la obligación de los padres de proveer alimentos a sus hijos menores reviste el más alto interés público, pues busca garantizar su bienestar. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 717 (2022); *Umpierre Matos v. Juelle Arbello,* 203 DPR 254, 265 (2019); *Ríos v. Narváez,* 163 DPR 611, 618 (2004). Dicha obligación "surge de la relación paterno-filial que se origina cuando la paternidad o maternidad quedan establecidas legalmente." *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 738-739 (2009). Esta responsabilidad constituye, además, un componente esencial del derecho a la vida reconocido en la Sección 7 del Artículo II de la Constitución de Puerto Rico. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; *Rivera v. Villafañe González,* 186 DPR 289, 293 (2012).

El Art. 653 del Código Civil de Puerto Rico, 31 LPRA sec. 7531, define los alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, conforme a la posición social de su familia." En el caso de los menores de edad, los alimentos incluyen, además, su educación, las atenciones de previsión ajustadas a los usos y circunstancias de su entorno familiar y social, así como los gastos extraordinarios necesarios para atender condiciones personales especiales. *Id.*

La determinación de la cuantía de alimentos a favor de un menor de edad corresponde al prudente arbitrio de los tribunales, sujeta a los criterios establecidos en la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.* (Ley Orgánica de la Administración para el Sustento de Menores), a las disposiciones del Código Civil de 2020 y al Reglamento Núm. 9535, conocido como Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico.

Dada la naturaleza fundamental de la obligación de los padres de alimentar a sus hijos, los tribunales tienen el deber de indagar la verdadera situación económica del alimentante. Art. 19 de la Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 518. En el desempeño de esta función, el tribunal no se limita a considerar únicamente la prueba testifical o documental relativa a los ingresos, sino que puede evaluar factores tales como el estilo de vida del alimentante, su capacidad para generar ingresos, la naturaleza y el valor de los bienes que posee, la naturaleza de su empleo o profesión y cualquier otra fuente de ingreso disponible. *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 563-566 (2012); *Argüello v. Argüello*, 155 DPR 62, 73 (2001); *Chévere Mourino v. Levis Goldstein*, 152 DPR 492, 501 (2000). Con base en la prueba presentada, el tribunal puede inferir que el alimentante cuenta con los medios suficientes

para cumplir con la obligación alimentaria que se le imponga. *Chévere Mourino v. Levis Goldstein, supra.*

De otra parte, el Artículo 671 del Código Civil, 31 LPRA sec. 7567 dispone que:

> La cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado.
>
> Cuando el alimentista es menor de edad o es un ascendiente de edad avanzada, la cuantía se modifica únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante.
>
> La modificación periódica de las pensiones de los menores de edad y de los ascendientes de edad muy avanzada se rige por la legislación especial complementaria.

Además, la ley establece expresamente que "[e]l alimentante no puede reducir la cuantía de la obligación sin la autorización judicial." Art. 672 del Código Civil, 31 LPRA sec. 7568. En caso de que ocurra un cambio en las circunstancias del alimentante que ameriten una modificación de la pensión, este deberá someter una solicitud de reducción al tribunal y, luego de probar sus fundamentos, el juzgador dictara su resolución, la cual será efectiva desde la fecha en que se emita. *Id.*

Es preciso destacar que, "[l]a insolvencia del alimentante no le exime del pago de la pensión." Art. 678 del Código Civil, 31 LPRA sec. 7574. En esas circunstancias, el tribunal puede modificar el modo de pago, pero no la cuantía razonable que necesite el alimentista para su subsistencia y desarrollo integral. *Id.*

Por otro lado, nuestro ordenamiento jurídico dispone que "[e]n caso de incumplimiento el tribunal puede imponer al alimentante cualquier sanción adecuada que le compela a cumplir su obligación. El encarcelamiento solo procede cuando hay evidente temeridad y obstinación ante las órdenes reiteradas de cumplimiento." Art. 677 del Código Civil, 31 LPRA sec. 7573.

Cónsono con lo anterior, el Tribunal Supremo ha reconocido que el encarcelamiento por desacato civil constituye una de las medidas que tienen

disponibles los tribunales como consecuencia del incumplimiento con una pensión alimentaria, ello a fin de lograr el cumplimiento de esta importante obligación social. *Umpierre Matos v. Juelle Abello, supra*, pág. 269; *Álvarez v. Arias*, 156 DPR 352, 372 (2002); *Viajes Lesana, Inc. v. Saavedra*, 115 DPR 703, 709 (1984). Dicho encarcelamiento responde a la resistencia del alimentante a acatar una orden judicial, y no al mero hecho de adeudar una suma específica de dinero. *Umpierre Matos v. Juelle Abello, supra; Viajes Lesana, Inc. v. Saavedra, supra.* "La excepción nace por el valor público que la permea. Más que forzar el pago de una deuda, de lo que se trata en esos casos es de compeler el cumplimiento de una responsabilidad de mayor jerarquía, de un deber revestido de un alto interés público." *Viajes Lesana, Inc. v. Saavedra, supra.* Ahora bien, si la persona obligada demuestra que el incumplimiento se debe a una causa justificada, no procede la imposición de esta medida extrema. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* 130 DPR 782, 805 (1992); *Espinosa v. Ramírez, Alcaide de Cárcel,* 72 DPR 901, 906 (1951); *Munet v. Ramos*, 69 DPR 353, 355 (1948); *Rivera v. Torres*, 56 DPR 583, 585 (1940); *Villa v. Corte*, 45 DPR 879, 900 (1933).

Asimismo, nuestro más Alto Foro ha expresado que, a diferencia del desacato criminal, el desacato civil tiene un propósito reparador y no punitivo. *Umpierre Matos v. Juelle Abello, supra*, pág. 270. Por ello, "debe emplearse con prudencia, en atención a la privación de libertad que conlleva, y limitarse a aquellos casos en los que exista una desobediencia voluntaria y obstinada a una orden o sentencia que concede alimentos, y en los que la continuación del encarcelamiento pueda producir el efecto de otorgar al alimentista la reparación necesaria". *Umpierre Matos v. Juelle Abello, supra*, págs. 270-271; *Sosa Rodríguez v. Rivas Sariego*, 105 DPR 518, 522 (1976).

De igual modo, "[a]un en los casos de alimentos, existen situaciones en que la prohibición constitucional [contra el encarcelamiento por deuda]

prevalecerá; en esas situaciones, el desacato civil pierde su razón de ser y la balanza de intereses se inclina a favor de la prohibición constitucional". *Srio. D.A.C.O. v. Comunidad San José, Inc.*, *supra*, pág. 805.

En *Turner v. Rogers*, 564 US 431 (2011), el Tribunal Supremo de los Estados Unidos reiteró que el desacato civil por incumplimiento de una pensión alimentaria únicamente procede cuando el tribunal determina que el alimentante tiene la capacidad económica para cumplir con la orden y, aun así, se rehúsa a hacerlo. El Alto Foro Federal aclaró que la imposición de medidas coercitivas que conllevan privación de libertad requiere una evaluación judicial previa sobre la capacidad real de pago del obligado, pues, de lo contrario, el desacato pierde su carácter reparador y resulta incompatible con las garantías del debido proceso de ley.

En armonía con dicha normativa, el Tribunal Supremo de Puerto Rico ha sostenido de forma inequívoca que, antes de ejercer el poder de desacato y privar de libertad a un alimentante incumplidor, el tribunal debe brindarle una oportunidad adecuada de ser oído. *Álvarez v. Arias*, *supra*. En aquellos casos en los que no se haya realizado una gestión previa válida para exigir el pago de la pensión, los tribunales no pueden ejercer su autoridad indiscriminadamente ni ordenar el arresto de una parte sin concederle la oportunidad de defenderse. *Id.* En términos sencillos, los tribunales están obligados a celebrar una vista antes de recurrir al mecanismo del desacato civil.

Por su parte, la Ley Orgánica de la Administración para el Sustento de Menores, *supra*, contempla el desacato civil "como uno de los mecanismos para compeler el cumplimiento de las órdenes emitidas por el Tribunal, por el Administrador o por el Juez Administrativo, y para hacer efectiva cualquier orden de pensión alimentaria en beneficio de un menor de edad". Art. 31 de la Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 529 (2). Asimismo, el citado artículo dispone que "[s]e podrá solicitar al

tribunal que encuentre a la parte alimentante incursa en desacato solamente cuando exista preponderancia de la prueba que pueda llevar al juzgador de hechos a entender razonablemente que dicha persona tiene la capacidad económica para cumplir con el pago de la pensión alimentaria establecida en beneficio de un menor alimentista." *Id.*, sec. 529 (3).

Este mandato legal presupone necesariamente la celebración de una vista evidenciaria como parte del debido proceso de ley, en la cual la parte tenga la oportunidad de demostrar, mediante preponderancia de la prueba, que carece de los medios económicos para cumplir con su obligación alimentaria.

**III.**

A la luz del marco jurídico antes expuesto y del curso procesal del caso, declaramos No Ha Lugar a la concesión del auxilio de jurisdicción solicitado. Del expediente surge que la orden recurrida se limita a requerir el pago de una deuda por concepto de pensión alimentaria previamente fijada y devengada, luego de que el propio peticionario redujera unilateralmente la cuantía de la pensión sin autorización judicial. Dicha orden no impuso ninguna sanción ni decretó el desacato del peticionario, sino que se circunscribió a apercibirle sobre la eventual emisión de una orden de mostrar causa en caso de incumplimiento.

En estas circunstancias, la ejecución de la orden impugnada no constituye una actuación arbitraria ni un abuso de discreción por parte del foro primario. Tampoco activa, en esta etapa procesal, las garantías propias de un procedimiento de desacato civil que conlleve la privación de libertad. En consecuencia, la alegación de un daño irreparable resulta prematura e insuficiente para justificar la paralización de una orden de pago válida mediante el remedio extraordinario del auxilio de jurisdicción.

No obstante, al evaluar los méritos del recurso, procedemos a expedir el auto de *certiorari* y concluimos que el foro primario actuó conforme a

derecho al exigir el cumplimiento de una obligación alimentaria vigente. Los planteamientos del peticionario relacionados con su alegada incapacidad económica o con la modificación de la pensión alimentaria deberán atenderse por las vías procesales correspondientes y no constituyen fundamento para relevarlo, en esta etapa, del cumplimiento de una deuda ya devengada.

Finalmente, en el supuesto de que el peticionario incumpla con la orden de pago y el foro primario determine celebrar una vista de desacato civil, corresponde a dicho foro asegurar que el procedimiento se lleve a cabo en estricto cumplimiento con las garantías del debido proceso de ley. A tales efectos, y de así proceder conforme a las circunstancias particulares del caso, el tribunal podrá considerar la designación de un abogado de oficio para la vista de desacato antes de imponer cualquier sanción coercitiva que conlleve la privación de libertad. Igualmente, el TPI debe considerar el imponer sanciones económicas a la parte peticionaria ante el incumplimiento con la orden de anunciar nueva representación.

Por todo lo anterior, declaramos No Ha Lugar la solicitud de auxilio de jurisdicción, expedimos el recurso de *certiorari* y confirmamos la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, declaramos No Ha Lugar la solicitud en auxilio de jurisdicción, expedimos el recurso de *certiorari* incoado y confirmamos la determinación recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones